**Ross D. MARGRAVES, Appellant,**

v.

**The STATE of Texas.**

**No. 1354–99.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 6, 2000.

Terrence W. Kirk, Austin, John L. Hill, Jr., Houston, for appellant.

Bill Turner, DA, Bryan, Matthew Paul, State's Atty., Austin, for the State.

WOMACK, J., delivered the opinion of the Court in which McCORMICK, P.J., MEYERS, MANSFIELD, KELLER, HOLLAND, and KEASLER, JJ., joined.

The appellant was the Chairman of the Texas A & M Board of Regents. He was charged by indictment with Official Misconduct for using a Texas A & M University System airplane to attend his son's graduation ceremony at Louisiana State

University (L.S.U.). After a five-day trial, a jury convicted the appellant in October 1996. The trial court accepted the agreement of the parties and set punishment at four years' confinement probated for a period of four years, $3,000 fine, and $1,435 in restitution. The appellant moved for a new trial, which was denied, and he appealed to the Fourteenth Court of Appeals.

The Court of Appeals reversed the appellant's conviction. *Margraves v. State*, 996 S.W.2d 290, 305 (Tex.App.—Houston [14th Dist.] 1999). The court found that the evidence was legally insufficient to sustain a conviction. *Margraves*, 996 S.W.2d at 302. It also held that the official misconduct statute was unconstitutionally void for vagueness. *Id.* at 304. The State petitioned for discretionary review on both issues, which we granted. We are asked to decide whether the Court of Appeals erred in its legal-sufficiency review by adopting the appellant's version of the facts, disagreeing with the notion that the jury was entitled to reject the appellant's exculpatory evidence, and reweighing the appellant's evidence to find that it "conclusively established" his defensive theory. We are also asked whether the Court of Appeals was correct in holding that the statute was unconstitutionally void for vagueness as applied to the appellant. We reverse and remand.

## I.

On August 4, 1993, when the appellant committed the offense, former Section 39.01 of the Penal Code was in effect. The relevant portion read:

> (a) A public servant commits an offense if, with intent to obtain a benefit or with intent to harm or defraud another, he intentionally or knowingly …
>
> (2) misapplies anything of value belonging to the government that has come into his custody or possession by virtue of his office or employment.[1]

A renumbered, retitled, and amended statute was to become effective on September 1, 1994,[2] but of course it was not applicable to the appellant's conduct.

The Court of Appeals' opinion mistakenly quotes and then cites to the new statute. The Court of Appeals' opinion is not a review of the new statute, although at first glance its citations might indicate otherwise. A close reading reveals that it is an interpretation of the old statute, however, and we consider this error to be simply a citation mistake.

The opinion never mentions any feature of the new statute, nor does it attempt to interpret it. It does not address any of the new language in the amended statute.[3] If one simply replaces its citations to the new statute with citations to the old, the opinion would read the same and its analysis would be no different.

The court recognized that "the charge defined the term misapply as 'to apply

---

1. *See* Act of June 19, 1983, 68th Leg., R.S., ch. 558, § 7, 1983 Tex.Gen.Laws 3237, 3241.

2. The statute was renumbered and amended by the Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 39.02, 1993 Tex.Gen Laws 3586, 3673. The new title of the offense was "Abuse of Official Capacity." The amendment was effective on September 1, 1994. *See id.,* § 1.19, 1993 Tex.Gen.Laws at 3705.

3. The only material changes were that the term "misapply" was replaced by the term "misuse," "or defraud" was added to the intent to harm, and the terms "government property, services, and personnel, or any oth-

er thing of value belonging to the government" replaced the more general "any thing of value belonging to the government."

    The amended statute defines "misuse" as dealing with property contrary to: an agreement under which the public servant holds the property; a contract of employment or oath of office of a public servant; a law, including provisions of the General Appropriations Act specifically relating to government property, that prescribes the manner of custody or disposition of the property; or a limited purpose for which the property is delivered or received. *See* Tex.Penal Code § 39.02 (2000).

    The things of value that are at issue in the appellant's case fit one or all of the examples listed and meet either definition.

wrongly or to misuse or spend without proper authority,' " *id.* at 303, which is the definition that we provided under the old statute in *Talamantez v. State*, 829 S.W.2d 174, 181 (Tex.Cr.App.1992). The Court of Appeals also identified the correct term, "misapply," in several other instances throughout the opinion.[4] At other points, the opinion uses "misuse" instead of "misapply," but this alternation is consistent with our interpretation of the old statute under *Talamantez*.

We view these mistakes by the Court of Appeals to be simple citation errors and not an assumption that the appellant was convicted under the new statute. We think that the most efficient judicial course is to review the opinion as if the Court of Appeals had cited the proper statute, and that our decision will be the same as if it had.

## II.

■ Before we can evaluate the Court of Appeals' holdings that the evidence is legally insufficient or the statute is unconstitutionally vague, we must state the proper construction of former section 39.01(a)(2). In this case the terms of the statute required the State to prove, among other things, that the appellant harbored the intent to obtain a benefit for himself and that he misapplied government property to obtain that benefit. The intent element may be satisfied before or during the misapplication of state property. *See Talamantez*, 829 S.W.2d at 181 ("one engages in official misconduct whenever one forms the requisite specific intent at the outset or in the course of or after misusing any thing of value belonging to the government").[5]

The Court of Appeals construed the misapplication element of section 39.01(a)(2) to require that the State prove beyond a reasonable doubt that either (1) the appellant conducted no state business on his trip or (2) the appellant used state property for both official and personal business, which the court termed a "mixed use" scenario, and the state incurred additional costs due to the personal portion of the trip. *Margraves*, 996 S.W.2d at 299. The court adopted the appellant's argument that, because the State had not proved beyond a reasonable doubt that the appellant had conducted no state business while on his trip, or that the state had incurred additional costs due to his personal business, the evidence was insufficient to sustain his conviction. *Id.* at 302.

The State argues that this construction of the misapplication element of section 39.01(a)(2) would permit a state official to take unauthorized personal trips without fear of prosecution if that official can dream up any state business that he might have pursued on his trip. The appellant responds that the Court of Appeals' alternate construction of the statute constrains the possibility of abuse, in that from such acts the state would necessarily incur additional expenses that would permit prosecution.

---

4. *See id.* at 303 ("[the] appellant was indicted under section 39.02(a)(2), which provides that a public servant commits an offense if, with the intent to obtain a benefit, he intentionally or knowingly *misapplies* anything of value belonging to the government that has come into his custody or possession by virtue of his office."); *id.* at 299 ("The indictment provides that [the] appellant ... [d]id then and there intentionally and knowingly, with the intent to obtain a benefit ... *misapply* a Texas A & M University System's aircraft which was a thing of value belonging to the government that came into his custody and possession by virtue of his office"); *id.* at 302 ("the hypo-

thetically correct jury charge for the *misapplication* of state property under section 39.02(a)(2)"); *id.* at 304 ("section 39.02(a)(2), which only generally criminalizes the *misapplication* of state property.").

5. The dictum in *Talamantez*, that the intent element may be satisfied after the conduct that amounts to the misapplication, is not accompanied by any explanation of how this may happen. At any rate, this case does not raise the issue and we decline to resolve it at this time.

The Court of Appeals' first construction of section 39.01(a)(2)—that the statute requires the State to prove that the appellant conducted no state business—conflicts with precedents interpreting the meaning of the term "misapply." In *Talamantez,* this Court gave "misapply" in this statute its common meaning: "1. to apply wrongly ... 2. to misuse or spend (as public money without proper authority)." *Talamantez,* 829 S.W.2d at 181. A public servant can misapply government property even when it is used for official purposes.

In *State ex. rel. Hightower v. Smith,* 671 S.W.2d 32 (Tex.1984), the state property at issue in *Hightower* was the use of county vehicles and fuel. The defendant in that case, a county sheriff, had accepted a rent-free apartment in which he did not live. In return for the apartment, the sheriff ordered extra security checks-in-passing for the apartment complex. The Supreme Court considered whether prosecution is permitted when the unauthorized use arguably also benefits the public, and it held that public benefit from the misapplication of state property does not shield a defendant from criminal liability. "Willfully using [state property] for private benefit constitutes misapplication or misappropriation, even though the same activity constitutes a legitimate public function." *Hightower,* 671 S.W.2d at 35.

The Court of Appeals' alternate construction of the statute was that in a "mixed use" scenario, in which a public servant used government property for both government and personal purposes, the prosecutor would be required to prove additional expense to the state. We agree that in this case if there had been no expense to the state from the appellant's trip, there would have been no misapplication. Further consideration of this construction is not necessary however, because it does not apply to the facts of this case.

The Court of Appeals found that its alternate construction of the statute had not been met because this case presented a "mixed use" in which there was no expense to the state from the appellant's "meeting with his son for ten minutes after graduation." *Margraves,* 996 S.W.2d at 301. The appellant was not convicted of misapplying state property for meeting with his son, however. He was convicted of misapplying state property in taking the state airplane to his son's graduation ceremony. Even when the alternate construction is used, the correct inquiry is whether there was additional expense to the state from the appellant's and his wife's using the state airplane instead of paying for tickets on a private carrier.

The validity of the alternate construction is made moot because the evidence does not justify the Court of Appeals' assumption that the appellant's use of the airplane was a "mixed use." Viewed in the proper light, the evidence was that the appellant's use had no genuine government purpose, as we explain below. It is for the jury to decide whether the intended purpose of the trip rendered it a misuse or misapplication of state property. The Court of Appeals held that "a public official cannot be prosecuted for a mixed use of state property where the evidence conclusively establishes that the use of state property benefits both the individual and the state ." *Margraves,* 996 S.W.2d at 302 (italics omitted). To reach this conclusion, however, the Court of Appeals had to assume that any act of official business, even if it were a trivial act or a sham, would constitute mixed use. Transposing such a blanket rule into the official misconduct statute is not dictated by the terms of the statute and is shown by this case to be unworkable.

### III.

Having explained the proper construction of the statute, we consider the Court of Appeals' legal sufficiency review. The Court of Appeals reviewed the facts by comparing the "Appellant's Analysis of the Evidence," *Margraves,* 996 S.W.2d at 299, against the "State's Analysis of the

Evidence," *id.* at 296. From the outset, this was in error. A "legal sufficiency of the evidence review does not involve any weighing of favorable and non-favorable evidence." *Cardenas v. State,* 30 S.W.3d 384 (Tex.Cr.App.2000). Instead, a legal-sufficiency review calls upon the reviewing court to view the relevant evidence in the light most favorable to the verdict and determine whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original); *Mason v. State,* 905 S.W.2d 570, 574 (Tex.Cr.App.1995). The Court of Appeals did not review the facts in the light most favorable to the verdict, but instead adopted the appellant's version of the facts in concluding that the evidence was legally insufficient.

■ Our review of the evidence shows that, knowing that his son was graduating from L.S.U., the appellant contacted Dr. Bill Mobley, the President of Texas A & M, in March 1993 and asked whether L.S.U. had commencement ceremonies similar to those at Texas A & M. Dr. Mobley interpreted this to mean that the appellant sought to receive an invitation from L.S.U. to attend the ceremonies as a visiting dignitary. Dr. Mobley contacted the Chancellor of L.S.U., Dr. Bud Davis, relayed the appellant's desire to be invited, and L.S.U. formally invited him to attend the ceremony. The invitation did not extend a role to the appellant other than attendance.

The appellant told Vickie Running, the Board's Executive Secretary, to reserve the largest and newest of the Texas A & M-system airplanes on April 13, 1993 for his trip to L.S.U. on August 4, 1993. When Ms. Running reserved the plane, Dorothy Holtcamp, the Texas A & M Aircraft Scheduling Coordinator, contemporaneously made a note that the purpose of the trip was for the commencement address. The appellant and his wife flew on the Texas A & M jet to the ceremony,

where he was seated on the stage, but he did not make the commencement address. The State points out that this reservation was made four months before the ceremony, and that, after he returned, he claimed that he had been invited to be a commencement speaker. In a memo that he sent to Dr. Mobley after a reporter had written a negative story about his trip, the appellant stated that "I was invited by the Chancellor of L.S.U. to ... bring remarks to the graduates at their commencement." The appellant did speak to the graduates, but the jury could have found that he did not know before that day that he was to speak. The evidence included a videotape recording of the ceremony at which the appellant remarked, "Dr. Davis did not tell me that I was going to have to get up here and do or say anything." The Court of Appeals said that "quite reasonably, [the] appellant's continued insistence that he was a commencement speaker undermined his credibility in the eyes of the jury, particularly after the jury viewed the videotape of the graduation." *Margraves,* 996 S.W.2d at 298.

At trial, the appellant abandoned his argument that he was conducting state business by attending the ceremony as an official invitee of L.S.U. He instead claimed that he went to conduct official state business by meeting with Dr. Davis to discuss the possibility of Texas A & M's leaving the Southwest Conference (S.W.C.) and joining the Southeastern Conference (S.E.C.), and the financial status of the S.E.C. The appellant testified that he had six telephone conversations with Dr. Davis about these matters after he was invited to the ceremony and before he arrived. Dr. Davis, however, recalled none of these conversations. The appellant argued that his discussion with Dr. Davis was of the utmost importance to the state, and his witnesses attested to the importance of the issues surrounding the breakup of the S.W.C. and to the need for discretion about Texas A & M's possible move from the S.W.C. to the S.E.C. None of these

witnesses, however, testified that the appellant needed to fly with his wife to have a face-to-face meeting with Dr. Davis about the subject, or that they thought that the appellant had flown with the intent to conduct state business rather than to see his son graduate.

The State argued to the jury that the appellant did not go to L.S.U. to have these discussions but went to watch his son graduate. Under this theory, the discussions with Dr. Davis were merely afterthoughts to the trip's actual purpose or were a pretext meant to disguise his true intent. To support its theory, the State showed that in his explanatory memo to Dr. Mobley, the appellant claimed that he had met with Dr. Davis in his office for an hour and a half. Dr. Davis testified that they did meet and informally discussed these matters, but the meeting was only for thirty to forty-five minutes, although they did have lunch afterward. Dr. Davis said that he had not scheduled an appointment to meet with the appellant, and that he did not and could not have had official discussions with the appellant, for doing so would have breached protocol. He stated that he wanted to take advantage of the appellant's trip to see his son graduate to have a friendly, informal conversation with him about the level of interest from Texas A & M in joining the S.E.C., and that the meeting would not have taken place had the appellant's son not been graduating that day. The jury could have found that this informal conversation was not the motivating reason for the appellant's trip.

In addition to the discrepancies surrounding the circumstances of the meeting, the jury heard evidence that the appellant exaggerated the importance of its substance. The State showed that the invitation to join the S.E.C. had been formally extended to Texas A & M a few years before the appellant's trip. And the State showed that the appellant was not the person at Texas A & M who would have negotiated the conference alignment; it would have been the job of the school president and the athletic director. The appellant did not seek out any other face-to-face meetings with any presidents of the other schools that made up the S.E.C. When the S.W.C. did break up, and Texas A & M joined the Big Eight Conference rather than the S.E.C., the appellant did not meet with any president or chancellor of any of the Big Eight's schools. The State contended that the highly unusual nature of the appellant's discussion with Dr. Davis showed that he was not conducting official state business during the meeting.

There was also evidence that the appellant's claim that he needed to get financial information about the S.E.C. was exaggerated to excuse his personal trip. The State showed that the Texas A & M Athletic Director already had this information and could have updated it anytime, if needed, with a phone call. The appellant showed that, as Chairman of the Board's Athletic Committee and "point-man" on the S.W.C. breakup, he was vested with special oversight of the Texas A & M Athletic Department, and that he discussed the S.W.C. breakup with Dr. Mobley after he returned. He argued that this conversation, and the fact that the Board of Regents approved his trip expenses after he returned, proved that he had been conducting official state business on his trip. To accept this argument, however, would require that we ignore the evidence that he intended to misapply state property when he reserved the plane. We would also have to overlook the memo from the appellant to Dr. Davis that he wrote after he returned in which he claimed to have been the commencement speaker.

In reweighing the appellant's evidence to find that it established his defensive theory, the Court of Appeals mistakenly accepted the appellant's version of what occurred on his trip to L.S.U. and his reasons for taking that trip. The court found that the appellant "*indisputably* ha[d] both a personal and official state purpose" for his use of the aircraft. *See*

*id.* at 300 (emphasis added); *see also id.* at n. 4 ("there is *overwhelming* evidence of official business conducted on this trip"); *id.* at 302 ("the evidence *conclusively* establishes that [this] use of state property benefits both the individual and the state") (emphases added). That discussions of issues of some concern to the state were conducted on the appellant's trip is insufficient for a court to overturn on appeal the jury's finding that the appellant had misapplied state property in taking the trip. By the very nature of his position, the appellant could always converse with another high-ranking school official about matters important to the university system, and the State presented evidence that this conversation did not motivate the appellant's trip. The State contended that this state business either was fabricated outright or was exaggerated to conceal the appellant's true intent. Both arguments were presented to the jury and supported by evidence, and the jury rejected the appellant's claim that he went to L.S.U. to conduct official state business when it convicted him.

The jury was free to infer from the State's evidence that the appellant harbored an intent to personally benefit from the use of the airplane when he reserved it, and that he had fabricated an invitation to be a commencement speaker when he later explained his use of the plane to the Texas A & M President. *Cf. Wolfe v. State,* 917 S.W.2d 270, 275 (Tex.Cr.App. 1996) (ruling that an intent to steal may be inferred from circumstantial evidence). The jury was also free to accept the State's argument that the appellant did not go to L.S.U. to discuss matters concerning the S.W.C. and the invitation of the S.E.C. but instead went to watch his son graduate, and that any discussion about the alignment of the conference was exaggerated or incidental to his trip.

■ In a sufficiency review, the jury's inference of intent is afforded more deference than the evidence supporting proof of conduct. Circumstantial evidence of a de-

fendant's guilty knowledge is not "required to meet the same rigorous criteria for sufficiency as circumstantial proof of other offensive elements." *See Brown v. State,* 911 S.W.2d 744, 747 (Tex.Cr.App.1995). "It is not necessary that this Court find to its own satisfaction that such was appellant's intent. It is enough for us to find that 'any' rational jury could have so found beyond a reasonable doubt." *Brimage v. State,* 918 S.W.2d 466, 476 (Tex.Cr.App. 1994).

The appellant argues that the jury was not entitled to find the elements of the offense simply by rejecting the appellant's exculpatory evidence. He refers us to the cases *Gold v. State,* 736 S.W.2d 685, 689 (Tex.Cr.App.1987) and *Wright v. State,* 603 S.W.2d 838, 840 (Tex.Cr.App.1980) for this proposition. These cases hold that disbelief of a defendant's exculpatory evidence does not relieve the State of its burden to prove the elements of the offense. But in this case there was evidence, beyond skepticism toward the appellant, that he took the airplane to go see his son graduate rather than to conduct official state business.

■ We cannot say that under *Jackson* the evidence presented to the jury was insufficient to permit the jury to convict the appellant. "The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony," *Barnes v. State,* 876 S.W.2d 316, 321 (Tex. Cr.App.1994), and "reconciliation of conflicts in the evidence is within the exclusive province of the jury," *Losada v. State,* 721 S.W.2d 305, 309 (Tex.Cr.App.1986). The jury may choose to believe some testimony and disbelieve other testimony. *Ibid.* There is enough credible testimony to support the appellant's conviction, and the conviction stands. *See id.* (quoting *Maedgen v. State,* 132 Tex.Crim. 397, 104 S.W.2d 518, 519 (1937)).

IV.

■ Finally we address the Court of Appeals' holding that former section

39.01(a)(2) was unconstitutionally void for vagueness. *See Margraves*, 996 S.W.2d at 304. For section 39.01(a)(2) to have been unconstitutionally vague, the statute would need to have failed to give public servants "of ordinary intelligence ... a reasonable opportunity to know what [conduct] is prohibited" and have failed to "establish determinate guidelines" for enforcing the statute, *see Long v. State*, 931 S.W.2d 285, 287 (Tex.Cr.App.1996).

Although the Court of Appeals attempted to limit its holding that the statute was vague "to the facts of this case," or only as applied to the appellant, the opinion holds that the statute is generally vague in "mixed use" situations. The first instance where the opinion attempts to limit its holding was not part of a vagueness analysis of the statute, but a criticism of the jury charge for incorporating A & M's internal regulations. *See Margraves*, 996 S.W.2d at 304. ("The statute provides no notice that it also encompasses alleged violations of Texas A & M's internal regulations. Accordingly, we hold that section 39.02(a)(2) is unconstitutionally vague as applied to the facts of this case").[6] After disapproving of the contents of the jury charge, the opinion holds that the statute is unconstitutionally vague generally for failing to provide notice or adequate guidelines for its enforcement when any public servant engages in a "mixed use" of state property. *See ibid.* ("the statute provides no fair warning and insufficient information of whether criminal liability attaches to instances where a state official engages in 'mixed use' of state property.") The

opinion then attempts to limit its vagueness holding by stating that it is "strictly limited" to the facts of the case. *Ibid.*

Despite the opinion's broad holding, because section 39.01(a)(2) does not implicate constitutionally-protected conduct, we need only determine whether the statute is vague as applied to the appellant's conduct, not whether it is vague on its face. *See Cain v. State*, 855 S.W.2d 714, 717 (Tex.Cr.App.1993).

The Court of Appeals held that the statute fails both prongs of the vagueness analysis. It held that the statute failed to give public servants, and specifically the appellant, notice of what conduct was prohibited when engaging in a "mixed use" of state property, and it also held that it failed to give law enforcement personnel adequate guidelines in such a scenario. *See Margraves*, 996 S.W.2d at 304. The court reasoned that the statute permitted arbitrary or discriminatory prosecutions of "public officials who may, quite innocently, mix business and personal matters while conducting state business." *Id.* at 303.

Before determining that the statute was vague, the court stated that *Bynum v. State*, 767 S.W.2d 769, 773–74 (Tex.Cr.App. 1989), held that hypotheticals are not used in analyzing a statute for vagueness. *See Margraves*, 996 S.W.2d at 303. This is a misinterpretation of the holding in *Bynum*. *Bynum* disapproved the use of hypotheticals only with respect to the first prong of the vagueness analysis, whether the statute failed to give the an accused notice that his conduct was prohibited.[7] Deter-

---

6. Despite this criticism of the instructions included in the jury charge, the opinion explicitly does not reach that issue. *See id.* at 292 ("In [his fifth point] of error, [the] appellant contends: ... the trial court erred in including certain special instructions as part of the court's charge"); *id.* at 305 ("In light of our disposition of points of error one through four, we need not reach appellant's, fifth ... point[ ] of error").

7. The discussion in *Bynum* on this point never addressed the use of hypotheticals in the second prong of the vagueness analysis, whether

a statute fails to give adequate guidelines for enforcing the law. Its discussion focuses solely on the first prong of the analysis:

> [W]hen a statute undergoes a vagueness challenge ..., the reviewing court need only scrutinize the statute to determine whether it is impermissibly vague as applied to the challenging party's specific conduct. Accordingly, when challenging the constitutionality of a statute it is incumbent upon a defendant to show that in its operation the statute is unconstitutional to him in his situation; that it may be unconstitutional to

mining whether a statute provides adequate guidelines for its enforcement requires more than evaluating the statute as applied to the defendant's conduct, for these guidelines seek to regulate the enforcement of the statute generally. That determination may often require the reviewing court to evaluate hypothetical situations to determine whether the guidelines are adequate. The court's opinion reflects the difficulty in prohibiting the use of hypotheticals in performing the analysis' second prong when it "nevertheless offer[ed] some examples to illustrate" how the statute was unconstitutionally vague. *Margraves*, 996 S.W.2d at 303.

The court described several factual situations that it says show that the statute subjects public servants to prosecution for innocent behavior. The court stated that "criminal liability would attach if a judge goes to the theater or plays a round of golf while attending a judicial conference, a district attorney can be prosecuted for lunching with a relative while out of town on official business, and the governor could be indicted if he visits his relatives on personal matters while he is in Florida on state business." *Ibid.* In each one of these situations, however, the business trips would not be converted into personal ones by such incidental conduct any more than the appellant's personal trip was converted into a business one by his trivial or sham business conduct.[8]

We do not find the statute to be unconstitutionally vague. The statute requires that a public servant use government property only in ways that are authorized. Using that property for personal benefit is an unauthorized misapplication under the *Talamantez* definition. *Talamantez*, 829 S.W.2d at 181. As applied to the appellant's conduct, using the A & M airplane to fly on a trip to see his son graduate was clearly not an authorized use of the airplane. The statute, therefore, did not fail to give the appellant fair warning that his contemplated conduct was prohibited by the statute. *See Cain*, 855 S.W.2d at 718. His protestations that his motive for taking the airplane to Baton Rouge was to meet with Dr. Davis for official state business do not factor into our vagueness analysis. That the appellant argued at trial, and has maintained throughout his appeal, that he went to L.S.U. primarily for official business shows that he was acutely aware that he was prohibited by the statute from taking the airplane to go see his son graduate. His argument in the Court of Appeals, that the statute is vague as applied to "mixed use" scenarios, is really just a restatement of his sufficiency claim, that he was convicted despite proving that he was on official business. We defer to the jury's factual finding on the question of whether his trip was for personal or official business.

This determination must be made on a case-by-case basis, for it would be impossible for the Legislature to specifically describe in the statute every possible act that would amount to criminal misuse of government property. "Condemned to the use of words, we can never expect mathematical certainty from our language."

others is not sufficient. Thus, the appellant's hypotheticals are of no value in examining his claim that § 32.45, *supra*, is unconstitutionally vague in this instance. Instead, we need only determine whether the statute is unconstitutionally vague as applied to the appellant's conduct.
*Bynum*, 767 S.W.2d at 774. Perhaps the Court of Appeals' interpretation of *Bynum* stems from the evidentiary rule that accompanies the two-step vagueness analysis: that only when the statute at issue implicates constitutionally-protected conduct may the defendant complain of its vagueness as applied to

others when arguing the first prong. *See, e.g., Cain*, 855 S.W.2d at 717.

8. Of course if, during an otherwise legitimate trip on state business, the judge charged the state for the theater tickets or eighteen holes, the district attorney let the state pick up the tab for the relatives' lunch, or the governor let the state pay for the extra expenses of the side-trip to the relatives' home, they would be subject to the proscriptions of the statute. But the misapplications would be those extra expenses, not the entire trips.

*Grayned v. City of Rockford,* 408 U.S. 104, 110 & n. 15, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

We note that the duty to distinguish between personal and business expenses has long been familiar to those who own or run a business and file their tax returns. *See, e.g., Kornhauser v. United States,* 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505 (1928) (holding that "where [an expense] against a taxpayer is directly connected with or ... proximately resulted from, his business, the expense incurred is a business expense within the meaning of ... the act."). It is not a great imposition on public officials to ask them to not charge the state for their personal trips. Because we do not find the statute to be vague as applied to the appellant's conduct, we sustain the State's point of error on the issue.

Accordingly, we reverse the opinion of the Fourteenth Court of Appeals and remand the case to that court for action consistent with this opinion.

JOHNSON, J., filed a concurring opinion.

PRICE, J., concurs in the result.

JOHNSON, J., concurring.

Appellant was charged under former TEX.PEN.CODE § 39.01(a)(2). At the time that the alleged criminal conduct took place, that section was titled "Official Misconduct" and read:

> (a) A public servant commits an offense if, with intent to obtain a benefit or with intent to harm another, he intentionally or knowingly:
>
> (1) ...
>
> (2) misapplies any thing of value belonging to the government that has come into his custody or possession by virtue of his office or employment.

Act of May 27, 1983, 68th Leg., R.S., ch. 558, 1983 TEX.GEN.LAWS 3237. The indictment plead an amount of loss to the State of Texas which placed the charged offense in the range of a third-degree felony. After changes by the Legislature in the 1993 session, § 39.01 became definitions, the former § 39.01 was renumbered as § 39.02, and "Official Misconduct" became "Abuse of Official Capacity." The changes became effective on September 1, 1994, slightly more than one year after the charged offense occurred. The newly-named offense now reads:

> (a) A public servant commits an offense if, with intent to obtain a benefit or with intent to harm or defraud another, he intentionally or knowingly;
>
> (1) ...
>
> (2) misuses government property services, personnel, or any other thing of value belonging to the government that has come into the public servant's custody or possession by virtue of the public servant's office or employment.

Under the new statute, the amount alleged falls into the range of a Class A misdemeanor.

It is apparent from the opinion of the court of appeals that, rather than using the version of the statute under which appellant was indicted and convicted, it used the current version of the statute in its analysis. This version of the statute was passed by the legislature in 1993 and became effective September 1, 1994.. This is no mere "mis-cite." I am unable to discover anywhere in the court of appeals' opinion a citation to the correct version of the statute.

The court of appeals begins by discussing appellant's conviction for official misconduct under § 39.02(a)(2) (Vernon 1994). *Margraves v. State,* 996 S.W.2d 290, 292–3, 299 (Tex.App.—Houston [14th Dist] 1999). Under the former statute, § 39.02(a)(2) was "Official Oppression," while in the current version, it is "Abuse of Official Capacity."

The confusion continues as the court of appeals indicates that the offense is a third-degree felony. The former § 39.02

was a Class A misdemeanor, as is the current § 39.02. The offense alleged under the former § 39.01 was, in fact, a third-degree felony.

Further evidence of use of the incorrect version of the statute appears in the court of appeals' analysis of the issues, in which it sets out the statute that it is construing and quotes the text of the current version of § 39.02(a)(2). *Margraves*, 996 S.W.2d at 299. This is error. The issue then becomes whether such error requires a remand to the court of appeals to reconsider its analysis under the proper statute.

Paragraph (a) of each statute differs from the other only by the addition in the current version of the words "or defraud" to the original phrase, "to harm." "Harm" is defined in § 1.07(25) as "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested." "Defraud" is used in many criminal statutes, most often in conjunction with "harm," [1] but is itself not defined. We are therefore to use the common meaning. Tex.Gov't Code § 311.011(a). An entry in a thesaurus gives the synonyms of dupe, swindle, cheat, or deceive. Webster's New World Thesaurus 323 (3d ed.1997). "Defraud," then appears to be a specific way of causing "harm." I believe that the addition of "or defraud" does not materially alter the meaning of the statute and thereby invalidate the analysis of paragraph (a) by the court of appeals.

Subparagraph (a)(2) differs more in wording, but, if looked at using common usages of the words, differs very little in substance:

(1) "Misapplies" becomes "misuses;" misuse (n.) is listed in the thesaurus as a synonym for misapplication. Webster's New World Thesaurus 507.

(2) The earlier statute includes "any thing of value;" the current statute lists specific things of value and concludes the list with "any other thing of value." The change in the current statute thus appears merely to list specific things which are of value and subject to misuse and does not alter materially the meaning of the former statute.

(3) The last change converts "his" into "the public servant's" in two places. This also appears to be clarification rather than a material alteration of the statute.

I therefore believe that, because the various changes did not materially alter the statute, the analysis of the court of appeals, which used the incorrect version of the statute, would have been no different under the correct statute. We may therefore review the court of appeals's decision without remanding the cause to the court of appeals for re-analysis under the correct statute. For the reasons stated in the majority opinion, I agree that the evidence was sufficient to sustain the conviction.

Appellant also raised the question of whether the statute was unconstitutionally vague as applied to him. The court of appeals spoke in general of terms of what must be shown before a statute may be declared unconstitutionally vague. *Margraves*, 996 S.W.2d 302–03. When it ruled on appellant's complaint, however, it stated twice, in consecutive paragraphs, that it found the statute "unconstitutionally vague as applied to the facts of this case," and "strictly limited to the facts of this case." *Id.* at 304. Thus, our review must be of the holding that the statute is unconstitutional as applied to appellant.

The court of appeals' decision rests on its definitions of "mixed use" and "misuse" in a mixed-use context, i.e., that misuse can be proved in a mixed-use context only by proof that the personal portion of the trip resulted in additional costs to the State, no matter the intent or the proportion of personal to business use. *Id.* at

---

1. *See* §§ 32.21(a) (defraud or harm), 32.22(a) (defraud or harm), 32.34(b)(2),(3) (defraud or harm), 32.46(a) (defraud or harm), 32.47(a) (defraud or harm), 32.49(a) (defraud or harm), 32.51(b) (defraud or harm), 35.02(a), (b) (defraud or deceive).

299–302. Those definitions led to the court of appeals' holding that the statute was unconstitutionally vague as applied because the statute did not criminalize the court of appeals' definition of mixed use of state property. *Id.* at 303–04.

The majority has found fault with the court of appeals's view of "mixed use" and the standard for determining misuse and remands for "action consistent with [its] opinion." Rather than addressing the issue of constitutionality as applied to appellant now, I believe that it would be better to remand this cause to the court of appeals for reconsideration of that issue, using the appropriate definitions and standards, after the court of appeals reconsiders its holding on the issue of misuse. I also recognize that there is an credible argument that addressing the issue of constitutionality at this time, as the majority has done, is efficient use of judicial resources.

I concur in the judgment of the Court.

