COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-006-CR

RUBEN GAMEZ APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

A jury convicted Appellant Ruben Gamez of one count of indecency with a child by exposure (count one) and one count of indecency with a child by contact (count two).  The trial court sentenced him to four years’ confinement in the Institutional Division of the Texas Department of Criminal Justice on count one and six years' confinement on count two, the sentences to be served concurrently. 
 In four points, Appellant argues that (1) the evidence is legally and factually insufficient to prove beyond a reasonable doubt that while acting with an intent to arouse or gratify his sexual desire, he intentionally exposed any part of his genitals to the female complainant, and (2) the evidence is legally and factually insufficient to prove beyond a reasonable doubt that while acting with an intent to arouse or gratify his sexual desire, he intentionally caused the female complainant to touch any part of his genitals.  Because we hold that the evidence is legally and factually sufficient to support Appellant’s convictions, we affirm the trial court’s judgment.

On May 15, 2004, the complainant, a seven-year-old girl, went to Appellant’s apartment at her mother’s request to give him some photographs.  Appellant and the complainant lived in the same apartment complex in Arlington, Texas.  The complainant knew Appellant because her mother had previously been in an eight-year relationship with Appellant’s cousin, Freddie, and Appellant had shared the complainant’s household at one time.

At trial, the complainant testified that when she went to Appellant’s apartment, he answered the door wearing a robe.  She stated that when she went into the apartment, he took the pictures and invited her in to look around his new apartment.  She testified that he then picked her up, carried her into the bedroom, set her on the bed, and got on top of her and began moving up and down.  On cross-examination, in response to the question, “Is it possible that he just fell with you when he was holding you and fell on top of you?” she answered, “I guess.”  She  further stated that his “middle part” was hard when he was on top of her and that she told him that he was hurting her.  She testified that he then rolled her over.  She testified that she could feel his “middle part” on her when he rolled her over.  She stated that she told him that she had to go, and that when she got off the bed and bent down to pick up her shoes that had slipped off, “his middle part was sticking out.”

The complainant’s mother testified that the complainant was happy when she left on the errand, but when she returned home, she was pale and ran to her room.  The complainant’s mother further testified that the complainant told her that when she went to Appellant’s apartment, he picked her up, carried her to the bedroom, and “laid himself on top of her”; that she told him that he was too heavy, so he flipped onto his back and put her on top of him; that she then told Appellant that she had to go, and when she got off the bed, “she saw his privates.”  After the complainant made these statements, her mother called the police and gave a written statement.

The same evening, the complainant’s mother took her to Cook Children’s Medical Center after the complainant reported to her aunt that while she was at Appellant’s apartment, “she had something wet on her leg, . . . [and] it touched her,” “it” meaning Appellant’s penis.

The doctor who examined her at the medical center testified that the complainant 

[s]aid she went to [Appellant’s] to drop off some pictures, and he told her to come in and went to his bedroom.  He put her on the bed, and then he put her on top of him.  She told him that she had to go.  So she got up, and then she saw what she called his middle part, which is his penis.  And he had a robe on, and she said she thought it stuck out of it and it was up.  And she said she also felt something wet on her shorts and a drop on her leg.

The complainant told the doctor that she was not sure whether Appellant’s penis touched her skin, but she knew she got a wet spot on her leg.  The doctor also testified that the complainant pointed to her left thigh to indicate where the wetness had occurred and that some spots on the complainant’s left thigh fluoresced under a light, indicating a protein substance.  The doctor swabbed those areas for evidence.  The swabs did not contain semen.  The forensic biologist for the Tarrant County Medical Examiner’s Office Crime Laboratory who tested the swab testified that it was her opinion that the sample was not an ejaculate.  She did not test the sample for DNA because her test did not reveal any sperm in the sample.  She also testified, however, that the sample could be a different bodily fluid.

The complainant’s mother testified that while she was involved with Appellant’s cousin, Freddie, she and her daughters and Freddie had shared a house with Appellant, and during that time she had never seen anything to indicate that Appellant acted inappropriately with her daughters.  She stated that her daughters were friendly with Appellant and would hug him, but they never jumped up into his arms.

Appellant testified that he has a ruptured disk and two herniated disks.  He stated that it was not uncommon for him to carry the complainant or hug her because every time she saw him, she’d hug him or jump in his arms.  On cross-examination, though, he stated that he did not ever carry her around because of his back but that she would frequently jump into his arms.  He testified that on the day in question, after she gave him the photographs, she stated that she wanted to see his apartment and headed into the bedroom, and as soon as he followed her into the room, she jumped into his arms, causing them both to fall onto the bed.  He stated that he immediately moved off of her and asked if she had been hurt by the fall, she said no, and she then left.  He further stated that he was wearing boxer shorts at the time and was unsure if his penis had been exposed, but 
any exposure, if it occurred, was accidental.  He also stated that his robe was tied shut the entire time that the complainant was in his apartment.

Although there is evidence that the exposure was accidental or unintended, and the complainant’s testimony did not specifically address intent, from the evidence presented a rational jury could have concluded that the exposure was intentional.
(footnote: 2)  The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony.
(footnote: 3)  Thus, a rational jury could have disbelieved Appellant’s testimony and inferred his intent to commit the offense from the testimony of the complainant and her mother.
(footnote: 4)  Applying the appropriate standards of review,
(footnote: 5) we therefore hold that the evidence is legally and factually sufficient to support Appellant’s conviction for indecency with a child by exposure.  We overrule Appellant’s first two points.

As to count two of the indictment, the issue is somewhat more problematic.  The indictment alleged that Appellant, “DID . . . , WITH THE INTENT TO AROUSE OR GRATIFY [HIS] SEXUAL DESIRE . . . , ENGAGE IN SEXUAL CONTACT WITH [THE COMPLAINANT], A CHILD YOUNGER THAN 17 YEARS AND NOT THE SPOUSE OF [APPELLANT] BY CAUSING [THE COMPLAINANT] TO TOUCH ANY PART OF [HIS] GENITALS.”
(footnote: 6)
 At trial, an extended bench conference took place regarding the difference between Appellant touching the child with his genitals as opposed to causing the child to touch his genitals.
(footnote: 7)  The trial court accurately noted the awkwardness of this statute when applied to the circumstances now before this court.  Yet there was evidence from which a rational jury could conclude that the State proved the elements of the offense as alleged—there was evidence that Appellant moved up and down on the complainant when he was on top of her, that he rolled her over on top of him when she said that he hurt her, that when he rolled her over, she could feel his hard penis, that his penis was still hard when she saw it as she picked her shoes up from the floor, and that these events all took place in the space of minutes.
 
 Based on the applicable standards of review,
(footnote: 8) we hold that the evidence is legally and factually sufficient to prove that 
while acting with an intent to arouse or gratify his sexual desire, Appellant intentionally caused the female complainant to touch any part of his genitals.
  We overrule Appellant’s third and fourth points. Having overruled all of Appellant’s points, we affirm the trial court’s judgment.  

LEE ANN DAUPHINOT

JUSTICE

PANEL A: CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  January 25, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See
 
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

3:
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).

4:
See 
Tex. Code Crim. Proc. Ann.
 art. 38.04; 
Margraves
, 34 S.W.3d at 919.

5:
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Hampton
, 165 S.W.3d at 693 (both setting out the legal sufficiency standard of review); 
Watson v. State
, 204 S.W.3d 404, 414–15, 417 (Tex. Crim. App. 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005) (both setting out the factual sufficiency standard of review).

6:
See
 
Tex. Penal Code Ann.
 § 21.11(a)(1) (Vernon 2003).

7:
See id.

8:
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Hampton
, 165 S.W.3d at 693 (both setting out the legal sufficiency standard of review); 
Watson
,
 
204 S.W.3d at 414–15, 417; 
Drichas
, 175 S.W.3d at 799 (both setting out the factual sufficiency standard of review).