

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-07-270-CR

RALPH EDGAR MESSENGER                                         APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I.  Introduction

In one point, Appellant Ralph Edgar Messenger appeals from his conviction for sexual assault.  We affirm.

---

[1] *See* TEX. R. APP. P. 47.1.

## II. Factual and Procedural History

On January 21, 2006, M.H., the complainant, and her husband, B.H., went to visit M.H.'s mother, Linda, at her home in Bedford, Texas, which she shared with M.H.'s stepfather, Messenger. When M.H. and B.H. arrived, Linda and Messenger were not there, so they used M.H.'s key and went inside. While they waited for Linda and Messenger, they watched television and drank martinis. A short time later, Linda, Messenger, and Bobby, M.H.'s nineteen-year-old stepbrother, came home and began watching television with them. Bobby was the only person who did not drink any alcohol that evening; he stayed between fifteen minutes to an hour and a half before leaving.

M.H. felt sick that evening and took some Nyquil in addition to the martinis. At some point that evening, she decided to go to bed. Linda led M.H. to a spare bedroom and helped her into bed. M.H. and Linda testified that M.H. only took her shoes off and remained otherwise fully clothed when she got into bed.

M.H. testified that, when she woke up, she was partially undressed and Messenger was holding her legs apart and sticking his tongue in and out of her vagina. She testified that, when she began to protest, Messenger said, "Oh, yeah, you are so special." He put his face back between her legs and held them down, keeping them spread. M.H. testified that she protested again and

2

then kicked him and pushed him off of her with her legs.  She testified that Messenger had no shirt on and that he fled the room after pulling up his shorts.

B.H. testified that he heard screaming and yelling and then saw Messenger coming out of the hallway area, wearing only his shorts.  A confrontation ensued in the kitchen between M.H., B.H., Linda, and Messenger when M.H. accused Messenger of sexually assaulting her.  Shortly thereafter, M.H. and B.H. drove home to Little Elm and called the Bedford police.

M.H. and B.H. returned to Bedford that night to give a statement to the police, and M.H. had a sexual assault exam performed.  Messenger provided DNA buccal swabs to the police, but no DNA tests were performed.  M.H. reported previous sexual activity with her husband on the day of the assault. The DNA technical leader of the Tarrant County Medical Examiner's office, Constance Patton, testified that there was little chance that Messenger left behind any recoverable DNA, due to the nature of the sexual assault.[2]

---

[2] Patton stated:

When you have possible saliva mixed with a vaginal specimen, that is a difficult sample to begin with, because you have an overwhelming contribution of DNA coming from the female . . . . Add to that, in this particular case, you have a semen contributor, so you have a possibility of at least three contributors. You have the female, her consensual partner, and the saliva contributor, if present.  So the chances of picking up DNA from the saliva contributor are extremely rare.  I can't say it's impossible, but the

3

During the course of the trial, M.H., Linda, and Bobby gave differing opinions regarding how intoxicated everyone was and how much alcohol had been consumed prior to the incident. Bobby testified that M.H. "kept kind of like . . . being flirtatious" with Messenger, and that she kept asking him, "How do these—like how do these glasses look?" Defense counsel asked Linda, "Did [M.H.] ask [Messenger] if . . . he thought she was sexy?" Linda replied, "Yes, she did. I heard that."

A jury convicted Messenger of sexually assaulting M.H. and assessed punishment at seven years' confinement. This appeal followed.

### III. Sexual Assault

Messenger contends that the evidence was legally insufficient to support his conviction for sexual assault. The trial court's charge to the jury stated:

> A person commits the offense of sexual assault if the person intentionally or knowingly causes the penetration of the female sexual organ of another person, by any means, without that person's consent. A sexual assault is without the consent of the other person if: the actor compels the other person to submit or participate by the use of physical force or violence; or the actor compels the other person to submit or participate by threatening to use force or violence against the other person, and the other person believes that the actor has the present ability to execute the threat, or other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring.

---

chances of picking that up would be extremely difficult, if not impossible.

4

**A. Standard of Review**

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

**B. Applicable Law**

A person commits sexual assault if the person "intentionally or knowingly causes the penetration of the . . . sexual organ of another person by any means, without that person's consent." TEX. PENAL CODE ANN. § 22.011(a)(1)(A) (Vernon Supp. 2007). A sexual assault occurs without "consent" when the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring. *Id.* § 22.011(b)(5).

**C. Analysis**

Messenger argues that the evidence was legally insufficient because there was evidence that the complainant was intoxicated at the time of the assault

5

and that she had previously acted in a "flirtatious manner" with him, and because there was no DNA evidence.

The State presented evidence through M.H.'s testimony that Messenger intentionally or knowingly sexually assaulted M.H. by penetrating her sexual organ using his tongue, without her consent. *See id*. § 22.011(a)(1)(A)*.* M.H. testified, "he was holding my legs apart, and he was--he had his head between my legs, and he was putting his tongue in and out of my vagina." She further testified,

> Q. When you realized where he was placing his tongue, what did you do?
>
> A. I told him to, "Get the fuck off of me."
>
> Q. And what did he–did he immediately do so?
>
> A. No.
>
> Q. What did you do?
>
> A. Well, he said, "Oh, you're so special," and he tried to go — and well, he did. He took his face, and he put it back down in between my legs, and he started licking on my vagina [sic] again, and he kept his hands on my legs and holding them down, keeping them spread. And I told him to, "Get the hell away from me," and since he didn't, I took my two legs, and I kicked him. I took them, and I leaned back, and I kicked him off of me, like kicked his shoulders and kicked him away from me and pushed him back.

6

Viewed in the light most favorable to the prosecution, the jury, the sole judge of the evidence's weight and credibility, could have found beyond a reasonable doubt that Messenger committed the offense of sexual assault. *See id.*; TEX. CODE CRIM. PROC. ANN. § 38.04 (Vernon 1979); *Clayton,* 235 S.W.3d at 778; *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Although there was varying testimony about how intoxicated M.H. was that night, a witness's intoxication bears on her credibility, which is a matter reserved for the jury. *Cain v. State*, 958 S.W.2d 404, 409 (Tex. Crim. App. 1997). Additionally, despite the lack of physical evidence, M.H. provided sufficient testimony to show that a sexual assault had occurred. *See Tinker v. State*, 148 S.W.3d 666, 669–70 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *see also Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978) (stating that the complainant's testimony, "standing alone, is sufficient evidence of penetration"). Finally, while there was testimony that M.H. acted in a flirtatious manner toward Messenger earlier in the evening, M.H. testified that his tongue was going in and out of her vagina when she woke up, another indication of her lack of consent. *See* TEX. PENAL CODE ANN. § 22.011(b)(5). Consequently, we hold that the evidence was legally sufficient to support the jury's verdict. We overrule Messenger's sole point.

## IV. Conclusion

Having overruled Messenger's sole point, we affirm the trial court's judgment.

PER CURIAM

PANEL F:    MCCOY, J.; CAYCE, C.J.; and WALKER, J.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: June 12, 2008