COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-270-CR

 

 

RALPH EDGAR MESSENGER                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction

In one point, Appellant Ralph Edgar Messenger appeals from
his conviction for sexual assault.  We
affirm.

 

 








II.  Factual and
Procedural History

On January 21, 2006, M.H., the complainant, and her
husband, B.H., went to visit M.H.=s mother, Linda,
at her home in Bedford, Texas, which she shared with M.H.=s stepfather,
Messenger.  When M.H. and B.H. arrived,
Linda and Messenger were not there, so they used M.H.=s key and went
inside.  While they waited for Linda and
Messenger, they watched television and drank martinis.  A short time later, Linda, Messenger, and
Bobby, M.H.=s nineteen-year-old stepbrother, came home
and began watching television with them. 
Bobby was the only person who did not drink any alcohol that evening; he
stayed between fifteen minutes to an hour and a half before leaving.

M.H. felt sick that evening and took some Nyquil in
addition to the martinis.  At some point
that evening, she decided to go to bed. 
Linda led M.H. to a spare bedroom and helped her into bed.  M.H. and Linda testified that M.H. only took
her shoes off and remained otherwise fully clothed when she got into bed.








M.H. testified that, when she woke up, she was partially
undressed and Messenger was holding her legs apart and sticking his tongue in
and out of her vagina.  She testified
that, when she began to protest, Messenger said, AOh, yeah, you are
so special.@  He
put his face back between her legs and held them down, keeping them
spread.  M.H. testified that she
protested again and then kicked him and pushed him off of her with her
legs.  She testified that Messenger had
no shirt on and that he fled the room after pulling up his shorts.

B.H. testified that he heard screaming and yelling and then
saw Messenger coming out of the hallway area, wearing only his shorts.  A confrontation ensued in the kitchen between
M.H., B.H., Linda, and Messenger when M.H. accused Messenger of sexually assaulting
her.  Shortly thereafter, M.H. and B.H.
drove home to Little Elm and called the Bedford police.

M.H. and B.H. returned to Bedford that night to give a
statement to the police, and M.H. had a sexual assault exam performed.  Messenger provided DNA buccal swabs to the
police, but no DNA tests were performed. 
M.H. reported previous sexual activity with her husband on the day of
the assault.  The DNA technical leader of
the Tarrant County Medical Examiner=s office,
Constance Patton, testified that there was little chance that Messenger left
behind any recoverable DNA, due to the nature of the sexual assault.[2]








During the course of the trial, M.H., Linda, and Bobby gave
differing opinions regarding how intoxicated everyone was and how much alcohol
had been consumed prior to the incident. 
Bobby testified that M.H. Akept kind of like
. . . being flirtatious@ with Messenger, and that she kept asking
him, AHow do theseClike how do these
glasses look?@ 
Defense counsel asked Linda, ADid [M.H.] ask
[Messenger] if . . . he thought she was sexy?@  Linda replied, AYes, she did.  I heard that.@ 

A jury convicted Messenger of sexually assaulting M.H. and
assessed punishment at seven years= confinement. This
appeal followed.

III.  Sexual Assault

Messenger contends that the evidence was legally
insufficient to support his conviction for sexual assault.  The trial court=s charge to the
jury stated:

A person commits the offense of sexual assault if the
person intentionally or knowingly causes the penetration of the female sexual
organ of another person, by any means, without that person=s consent.  A sexual assault is without the consent of
the other person if: the actor compels the other person to submit or
participate by the use of physical force or violence; or the actor compels the
other person to submit or participate by threatening to use force or violence
against the other person, and the other person believes that the actor has the
present ability to execute the threat, or other person has not consented and
the actor knows the other person is unaware that the sexual assault is
occurring.








A.  Standard of Review

In reviewing the legal sufficiency of the evidence to
support a conviction, we view all the evidence in the light most favorable to
the prosecution in order to determine whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).

B.  Applicable Law

A person commits sexual assault if the person Aintentionally or
knowingly causes the penetration of the . . . sexual organ of another person by
any means, without that person=s consent.@ TEX. PENAL CODE ANN. ' 22.011(a)(1)(A)
(Vernon Supp. 2007).  A sexual assault
occurs without Aconsent@ when the other
person has not consented and the actor knows the other person is unaware that
the sexual assault is occurring.  Id.
' 22.011(b)(5).

C.  Analysis








Messenger argues that the evidence was legally insufficient
because there was evidence that the complainant was intoxicated at the time of
the assault and that she had previously acted in a Aflirtatious manner@ with him, and
because there was no DNA evidence. 

The State presented evidence through M.H.=s testimony that
Messenger intentionally or knowingly sexually assaulted M.H. by penetrating her
sexual organ using his tongue, without her consent.  See id. ' 22.011(a)(1)(A).  M.H. testified, Ahe was holding my
legs apart, and he was--he had his head between my legs, and he was putting his
tongue in and out of my vagina.@  She further testified, 

Q.  When you realized
where he was placing his tongue, what did you do?            

 

A.  I told him to, AGet the fuck off of me.A 

 

Q.  And what did heBdid he immediately do so?

 

A.  No.

 

Q.  What did you do?

 

A. 
Well, he said, AOh, you=re so special,@ and he tried to goCand well, he did.  He took his face, and he put it back down in
between my legs, and he started licking on my vagina [sic] again, and he kept
his hands on my legs and holding them down, keeping them spread.  And I told him to, AGet the hell away from me,@ and since he didn=t, I took my two legs, and I kicked
him.  I took them, and I leaned back, and
I kicked him off of me, like kicked his shoulders and kicked him away from me
and pushed him back.








Viewed in the light most favorable to the prosecution, the
jury, the sole judge of the evidence=s weight and
credibility, could have found beyond a reasonable doubt that Messenger
committed the offense of sexual assault. 
See  id.; TEX. CODE CRIM. PROC. ANN. ' 38.04
(Vernon 1979); Clayton, 235 S.W.3d at 778; Margraves v. State, 34
S.W.3d 912, 919 (Tex. Crim. App. 2000). 
Although there was varying testimony about how intoxicated M.H. was that
night, a witness=s intoxication bears on her credibility,
which is a matter reserved for the jury.  Cain v. State, 958 S.W.2d 404, 409
(Tex. Crim. App. 1997).  Additionally,
despite the lack of physical evidence, M.H. provided sufficient testimony to
show that a sexual assault had occurred. 
See Tinker v. State, 148 S.W.3d 666, 669B70 (Tex. App.CHouston [14th
Dist.] 2004, no pet.); see also Garcia v. State, 563 S.W.2d 925, 928
(Tex. Crim. App. 1978) (stating that the complainant=s testimony, Astanding alone, is
sufficient evidence of penetration@).  Finally, while there was testimony that M.H.
acted in a flirtatious manner toward Messenger earlier in the evening, M.H. testified
that his tongue was going in and out of her vagina when she woke up, another
indication of her lack of consent.  See
TEX. PENAL CODE ANN. ' 22.011(b)(5).  Consequently, we hold that the evidence was
legally sufficient to support the jury=s verdict.  We overrule Messenger=s sole point.








IV.  Conclusion

Having overruled Messenger=s sole point, we
affirm the trial court=s judgment.

PER CURIAM

 

PANEL F:     MCCOY,
J.; CAYCE, C.J.; and WALKER, J.

 

DO NOT PUBLISH

Tex. R.
App. P. 47.2(b)

 

DELIVERED: June 12, 2008











[1]See Tex. R. App. P. 47.1.





[2]Patton stated:

 

When you have possible saliva mixed with a vaginal specimen, that is a
difficult sample to begin with, because you have an overwhelming contribution
of DNA coming from the female . . . . Add to that, in this particular case, you
have a semen contributor, so you have a possibility of at least three
contributors.  You have the female, her
consensual partner, and the saliva contributor, if present.  So the chances of picking up DNA from the
saliva contributor are extremely rare.  I
can=t say it=s impossible, but the
chances of picking that up would be extremely difficult, if not impossible.