FORD V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-481-CR

DEMARCUS SIRRAY FORD APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In his sole issue, Appellant Demarcus Sirray Ford appeals the sufficiency of the evidence to prove that a deadly weapon was used or exhibited in each of three counts of aggravated robbery of a Subway restaurant.  We affirm.

PROCEDURAL HISTORY

As will be set out in more detail in this opinion, on the evening of November 19, 2002, two men entered a Subway restaurant in Arlington, Texas, one of them ordered the clerk to open the register, and the two men escaped with $88.  The three clerks who were working that evening were eyewitnesses and testified at trial.  Appellant was indicted for, and a jury convicted him of, three counts of aggravated robbery with a deadly weapon, to wit:  a firearm.  Each count arose out of the same criminal transaction but involved a different complainant.  The jury assessed Appellant’s punishment at twenty-five years’ confinement and a $5,000 fine for each count; the trial court ordered these sentences to run concurrently.

In his sole issue on appeal, Appellant contends the trial court erred in denying Appellant’s motion for directed verdict because the evidence was legally and factually insufficient to prove that a deadly weapon was used or exhibited in the commission of the offense.
(footnote: 2)  Specifically, Appellant contends that only one of the three eyewitnesses testified that Appellant used or exhibited a weapon during the commission of the offense, that a weapon or gun is not a deadly weapon per se, and therefore the State failed to meet the level of proof necessary to establish that Appellant used or exhibited a deadly weapon in the commission of the offense.

STANDARDS OF REVIEW

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict,  considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.  

FACTUAL BACKGROUND

Appellant and his co-defendant Joshua Knight were not identified and caught until sometime after the night of the incident.  Following their arrest, each defendant signed separate written statements acknowledging that on November 19, 2002 they entered a Subway restaurant in Arlington, Texas. Appellant’s statement recites that on the night of the robbery he and Knight stopped at Subway for food; Appellant admitted that he knew that Knight had been robbing other Subway restaurants with other friends.  According to Appellant, Knight jumped over the counter and the clerk started yelling.  Appellant stated that he “figured then [Knight] was robbing the place.”  Two other clerks were working that evening and Appellant said he just held up his hands and told one of them to calm down.  Appellant said that after Knight took the money from the register, he and Appellant left.  Appellant’s statement recites that he never had a weapon and did not think Knight had a weapon either, and he never got any of the money.  Appellant did not testify at trial.

In his statement, Knight said he is a heroin and cocaine addict.  He admitted robbing the Subway with Appellant, but claims neither of them used a gun or any kind of weapon, and he made no verbal threats.  He ordered an employee to open the register, and either Knight or the employee removed the money.  Knight and Appellant left with the money which they split equally.

Sanmukh Patel testified that he is the owner of the Subway restaurant in question.  On November 19, 2002, two clerks were working with him in the restaurant.  At 8:50 p.m., a man rushed in, jumped over the counter, and demanded Patel give him money from the cash register.  At the same time, Appellant walked in through a side door.  Although Patel did not see a gun and no one mentioned a gun during the robbery, Patel was in fear of bodily injury or death if he did not comply with the demand for money.

Mariah Morris testified that she was working in the Subway restaurant on the evening of November 19, 2002 when the owner started screaming.  Two men entered the restaurant; one man jumped over the counter, and the other man came around to the side door of the restaurant.  Morris slid underneath the counter right beside the door to get out of the way.  Both of the men who had entered the restaurant declared they wanted money, and the man who had walked in the side door threatened to shoot.  From Morris’s vantage point, she could clearly see the man behind the counter but could only see the second man from the waist down.  (This second man is the one who had entered through the side door and who was later identified by other witnesses as Appellant).  Morris saw Appellant reach “for what appeared to be a gun stuffed under his pants underneath his shirt and the butt -- like the bottom of a gun, the butt of the gun,” although Morris did not actually see a gun.  During this time she was in fear of imminent bodily injury or death.

Melinda Douglas was the third clerk working at the Subway restaurant on the evening of the robbery.  She testified that a man came into the restaurant, jumped the counter, and said, “I’m not here to hurt anyone.  All I want is the money.”  Douglas tried to run out the door that was for “employees only,” but another man, Appellant, shoved her and pushed her into the kitchen area.  The man who had jumped the counter kept demanding money and Appellant repeatedly said that if they didn’t give them any money he was going to shoot.  Douglas saw Appellant retrieve a “weapon” from behind his back; Appellant continued to say that if they didn’t give them any money, he was going to shoot.  When asked to describe the weapon that Appellant wielded in his hand, Douglas stated “I’m not really familiar with guns” but her father had one that was similar and the weapon that Appellant held was silver with a black handle and a short barrel.  Douglas testified, “I was fixin’ to run until I seen the gun so I went back.”  She acknowledged that Appellant never actually pointed the weapon, but she testified that she was very afraid and in fear of imminent bodily injury or death.

DISCUSSION

A “deadly weapon” is defined by the penal code as: 

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or 

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

Tex. Penal Code Ann.
 § 1.07(a)(17) (Vernon Supp. 2004-05).  The trial court’s charge to the jury contained this definition of “deadly weapon” as well as the definition of “firearm” set out in the penal code:

(3) “Firearm” means any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use.

Id.
 § 46.01(3).  A firearm is a deadly weapon per se.  
Ex parte Moore
, 727 S.W.2d 578, 580 (Tex. Crim. App. 1987).  However, a gun is not a deadly weapon per se. 
 Id.; Ex parte Grabow
, 705 S.W.2d 150, 151 (Tex. Crim. App. 1986).  In determining the deadliness of a weapon the jury may consider all of the facts of a case, including words spoken by the accused.  
Blain v. State
, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983).

The evidence established that Appellant used or exhibited a “gun” or “weapon” to one of the convenience store clerks and another clerk saw Appellant reach under his clothing for what she believed to be a “gun.”  The clerk who actually saw and described the “gun” testified that Appellant held the gun while continuing to repeat that he would shoot if the clerks did not give him and his co-defendant the money.  All three witnesses testified that they were in fear of imminent bodily injury or death.  We hold that the evidence presented is legally and factually sufficient to support the jury’s finding that Appellant used or exhibited a deadly weapon, a firearm, in the commission of the robberies.  
See Gomez v. State
, 685 S.W.2d 333, 336 (Tex. Crim. App. 1985) (holding that “revolver” is a firearm; therefore, revolver is a deadly weapon and State proved beyond reasonable doubt that weapon used was a firearm).

CONCLUSION

Having found the evidence legally and factually sufficient to support the jury’s deadly weapon finding, we overrule Appellant’s sole issue and affirm the judgment of the trial court.

PER CURIAM

PANEL F:  HOLMAN, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  March 10, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
A challenge to the denial of a motion for instructed verdict is actually a challenge to the 
legal
 sufficiency of the evidence.  
McDuff v. State
, 939 S.W.2d 607, 613 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 844 (1997); 
Franks v. State
, 90 S.W.3d 771, 789 (Tex. App.—Fort Worth 2002, pet. ref’d, untimely filed).  However, Appellant’s brief argues both legal and factual sufficiency of the evidence, and requests either an acquittal or a reversal and remand for a new trial.  Therefore, because this court is obligated to liberally construe briefs, 
see
 
Tex. R. App. P. 38.9, 
we construe Appellant’s issue on appeal as challenging the legal 
and
 factual sufficiency of the evidence.