Opinion issued September 28, 2006




















In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01146-CR
____________

FELIPE TORRES CUEVAS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 232nd Judicial District Court
Harris County, Texas
Trial Court Cause No. 1001764
 

 
 
MEMORANDUM OPINIONA jury found appellant, Felipe Torres Cuevas, guilty of the offense of murder



and assessed his punishment at confinement for twelve years. In four points of error,
appellant contends that the evidence is legally and factually insufficient to establish
that he caused the complainant’s death and support the jury’s implicit rejection of his
theory of self-defense.
          We affirm.
Factual Background
          Houston Police Officer C. Cegielski testified that, on March 30, 2004, at
approximately 2:00 p.m., he was dispatched to the Stratford Oaks Apartments for a
“DOA, unknown cause.” Cegielski arrived and noticed what appeared to be a bullet
hole through the window of apartment number 907. Inside the apartment, Cegielski
found the body of the complainant, Edna Mike, lying in her bed with a bullet hole
under her right eye. The complainant appeared to have been shot from outside of the
apartment while she was watching television. Other police officers at the scene found
a shell casing at an angle that was consistent with this theory. During Cegielski’s
investigation of the scene, several witnesses reported “some sort of disturbance . . .
where shots had been fired the night before.”
 

          Augustine Guzman, the apartment complex’s lead maintenance supervisor,
testified that, on March 30, 2004, at about 10:00 or 11:00 a.m., the manager instructed
him to serve appellant with an eviction letter and change the locks on appellant’s
apartment. When he entered appellant’s apartment to deliver the notice, Guzman saw
a box of bullets next to a television and a handgun on top of the entertainment center. 
He immediately reported this to the apartment manager and, later, to a detective.
          Houston Police Homicide Detective B. McDaniel testified that, on March 30,
2004, at approximately 2:30 p.m., he was dispatched to investigate the complainant’s
death. McDaniel determined that the complainant had been struck by a bullet that
entered the apartment through her bedroom window. McDaniel explained that, from
the location of a recovered shell casing, the shooter was likely standing in the
apartment complex’s parking lot. 
          The next day, the apartment manager called McDaniel and told him that
appellant had come into his office and told him what had occurred in the parking lot
on the night of the shooting. McDaniel later obtained from appellant a signed consent
to search appellant’s apartment. Once inside, McDaniel found and seized a nine
millimeter handgun and bullets. McDaniel explained that, during the search,
appellant admitted that he had discharged his firearm in the apartment complex’s
parking lot the night before, but he stated that he had done so in self-defense. 
Appellant then voluntarily went with McDaniel to a police station, where appellant
gave a videotaped statement describing the events on the night of the shooting. 
          A portion of the videotaped statement was played to the jury, and a transcript
of the statement was provided to assist the jurors. In his statement, appellant
explained that he discharged his firearm twice in the air as a man with a bat “was
driving away” in a car toward the back of the complex, which happened to be a dead
end. Appellant agreed that the man was probably attempting to exit the apartment
complex, but did not know how. Appellant explained that he then moved to “the
middle of the parking [lot]” and shot “about three times.” Appellant stated that after
the man with the bat left the parking lot, he told his nephew to bring another gun to
scare any others in the complex who might come after him. McDaniel testified that,
appellant, in his videotaped statement, never stated that the car attempted to run him
over. 
          Anna Perez, a resident of the Stratford Oaks Apartments, testified that, on the
night of the shootings, she heard a gunshot that sounded like it hit her door. She
walked outside her apartment and saw appellant arguing with some people in a car
in the parking lot. She then retreated back into her apartment. Later, she exited her
apartment and saw the car driving away from appellant at a high rate of speed toward
the back of the complex, where there is no exit. She then re-entered her apartment,
warned her family of the danger, and went back outside. She again saw appellant,
who was now standing closer to her apartment in a courtyard, and noticed that he had
a gun. Appellant shot at the car as it sped by toward the back of the complex. At this
point, she also saw another man going up the stairs toward appellant’s apartment with
a “big shotgun,” but she did not see him shoot. She explained that the next thing she
saw was the car heading toward the exit “going so fast and [appellant] was so close
to the car that for a second [she] thought [the car] was running him over.” She then
saw appellant run toward the speeding car and fire at the car as it drove away. 
          Tomaso Moreno, an apartment resident, testified that when she heard the
gunshots, she looked outside her window and saw two men ascending the stairs
toward appellant’s apartment. The second time she looked out, she saw two men, one
with a “rifle,” descending the stairs.
          Harris County Medical Examiner Dr. D. Wolf testified that he performed an
autopsy on the complainant’s body and determined that she died from a gunshot
wound to the head. He also stated that he recovered a bullet from the complainant’s
head during the autopsy and sent it to the firearms laboratory for examination. 
Houston Police Firearms Laboratory technician M. Lyons testified that the bullet
recovered from the complainant’s head came from appellant’s gun.
 

          Appellant testified that, on the evening of March 29, 2004, he had been playing
pool and drinking alcohol at a friend’s house. He called his nephew to bring him
home because his wife had his car. When they arrived at his apartment, appellant saw
a man standing next to a car in the parking lot. The man, who smelled of marijuana,
looked at appellant strangely. Appellant asked the man, “What’s up?” After the man
did not respond, appellant walked by him and kept looking back “[b]ecause [he] was
afraid that [the man] was going to do something from behind [him].” The man then
reached into his car for a baseball bat. Appellant turned around and “made a gesture
like telling [the man] to come towards [appellant].” When the man “raised the bat,”
appellant ran up the stairs to his apartment and retrieved his handgun “to frighten the
man.” 
          After appellant retrieved his handgun, he returned to the stairs and saw the man
with the baseball bat “going down the first step” of the stairs. The man then began
to run toward his car, and appellant followed. When appellant made it to the
apartment courtyard, he saw that the man had reached his car and had it in reverse. 
Appellant agreed that, at this point, the man with the bat was no longer a threat to
him. The man then sped down the parking lot toward a dead-end. As the car was
speeding toward the dead-end, appellant “fired two shots into the air” “to scare him.” 
Appellant “just wanted [the man] to leave” and he continued to walk in the direction
of the car “to know if [the man] had already left.” When appellant got to the main
driveway, he saw the car and fired another shot “into the air.” At that point, the car
began to speed toward appellant. Appellant explained that the man driving the car
“wanted to hit him,” but appellant “jumped toward the right” and the car missed. 
After the car had passed, appellant continued to follow after the car. When the car
came around another corner, appellant fired one more shot “more or less toward the
car.” While shooting, appellant “was more or less at the area supposedly where the
[complainant] lived.” Appellant then went back to his apartment and fell asleep. 
          Appellant further testified that he did not know where any of the discharged
bullets had landed. He explained that he was afraid during the “whole situation” and
that he was afraid for his life “when he tried to hit me with the car.” Appellant stated
that he did not tell McDaniel, during his videotaped statement, that he was acting in
self-defense because he was nervous and felt that McDaniel was “pushing [him] to
say what [McDaniel] wanted [him] to [say].”
Standard of Review
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. 
Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). The trier of fact
is the sole judge of the weight and credibility of the evidence. Margraves v. State,
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal
sufficiency review, we may not re-evaluate the weight and credibility of the evidence
and substitute our judgment for that of the fact finder. Dewberry v. State, 4 S.W.3d
735, 740 (Tex. Crim. App. 1999). We must resolve any inconsistencies in the
evidence in favor of the verdict. Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App.
2000).
          In our review of the factual sufficiency of the evidence, we view all of the
evidence neutrally, not in the light most favorable to the verdict, and we will set aside
the verdict “only if the evidence is so weak that the verdict is clearly wrong and
manifestly unjust, or the contrary evidence is so strong that the standard of proof
beyond a reasonable doubt could not have been met.” Escamilla, 143 S.W.3d at 817. 
The only question to be answered in a factual sufficiency review is whether,
considering the evidence in a neutral light, the fact finder was rationally justified in
finding guilt beyond a reasonable doubt. Zuniga v. State, 144 S .W.3d 477, 484 (Tex.
Crim. App. 2004). In performing a factual sufficiency review, we are to give
deference to the fact finder’s determinations, including determinations involving the
credibility and demeanor of witnesses. Id. at 481; Cain v. State, 958 S.W.2d 404, 407 

(Tex. Crim. App. 1997). We may not substitute our judgment for the fact finder’s. 
Zuniga, 144 S.W.3d at 482.
                                                     Cause of Death
           In his third and fourth points of error, appellant argues that the evidence is
legally and factually insufficient to support his conviction for the offense of murder
because the “State failed to establish that the appellant caused the complainant’s
death.”         
          Appellant asserts that “[n]o scientific evidence linked the appellant’s firearm
to the bullet that caused the complainant’s death.” Appellant notes that two witnesses
suggested that there was another person with a gun in the parking lot on the night of
the complainant’s death. He points to Perez’s testimony that she saw another man
with a “big shotgun,” and Moreno’s testimony that she saw a man with a “rifle” that
was “big, long.” He contends that the State “failed to eliminate this other individual
and his weapon as the cause of the complainant’s death.” 
          However, in his videotaped statement, appellant stated that he discharged his
handgun twice in the air and three times at a car in the parking lot. Appellant also
admitted that he had fired his weapon while in the vicinity of the complainant’s
apartment. Moreover, Dr. Wolf testified that the complainant died from a single
gunshot wound to the head and Lyons identified the bullet extracted from the
complainant’s head as coming from appellant’s handgun. Thus, there was ample
evidence to prove that appellant caused the death of the complainant.
          Viewing the evidence in the light most favorable to the jury’s verdict, we
conclude that a rational trier of fact could have found, beyond a reasonable doubt,
that appellant caused the complainant’s death. Furthermore, viewing the evidence
neutrally, we conclude that the evidence is not so weak that the verdict is clearly
wrong or manifestly unjust or that the standard of proof beyond a reasonable doubt
could not have been met. Accordingly, we hold that the evidence is legally and
factually sufficient to prove that appellant caused the death of the complainant.
          We overrule appellant’s third and fourth points of error.
          Self-Defense
          In his first and second points of error, appellant argues that the evidence is
legally and factually insufficient to support his conviction for the offense of murder
because the State did not rebut his assertion of self-defense “beyond a reasonable
doubt.”        
          However, the State does not have to rebut the defense beyond a reasonable
doubt, but “has the burden of persuasion in disproving the evidence of self-defense.” 
Saxton v. State, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). The State’s burden “is
not a burden of production, i.e., one which requires the State to affirmatively produce
evidence refuting the self-defense claim, but rather a burden requiring the State to
prove its case beyond a reasonable doubt.” Id. “[M]ore importantly, case law
instructs us that the issue of self-defense is an issue of fact to be determined by the
jury.” Id. The Texas Court of Criminal Appeals has explained that “[a] jury verdict
of guilty is an implicit finding rejecting the defendant’s self-defense theory.” Id. at
914. 
          A person is justified in using deadly force against another if, among other
things, a reasonable person in the actor’s situation would not have retreated. Tex.
Pen. Code Ann. § 9.32(a)(2) (Vernon 2003). 
          Appellant asserts that “he discharged his firearm in the air in order to frighten
away an individual with a baseball bat.” He contends that he “shot at this individual
in his vehicle only after the individual had tried to run him over.” Appellant testified
that when he saw the man in the parking lot of the complex reach in his car for a
baseball bat and raise it at him, he ran to his apartment and retrieved his gun to
frighten the man. The man then turned around and ran toward his car, but appellant
continued to follow the man. As the man sped toward the dead end in the apartment
complex, appellant conceded that he was no longer threatened with the bat, but stated
that he fired two shots into the air to make certain the man left. Appellant then
continued to follow the car and fired another shot into the air. Appellant testified that
the car then came toward him and the man “wanted to hit him.” However, after the
car missed him, appellant continued to follow the car and fired one more shot “more
or less toward the car” while in the vicinity of the complainant’s apartment. At least
one other witness saw the car “going fast” and thought that the car was “running over
[appellant].” However, the same witness saw appellant shoot at the car as it drove
away.
          Given the evidence in this case, the jury could have reasonably concluded that,
at the times appellant fired his handgun, he was no longer in a situation where he
could reasonably believe that deadly force was immediately necessary to protect
himself against another’s use of force. See Tex. Pen. Code Ann. § 9.31(a) (Vernon
2003).


 For example, the jury could have determined that a reasonable person in
appellant’s situation would have retreated to his apartment and locked the door, not
come back outside with a gun or that, after scaring the man away from his apartment,
appellant could have retreated to his apartment without firing any shots into the air
or at the car. The jury could also have concluded that appellant forfeited his right to
claim self-defense because, after retrieving his weapon, appellant pursued the man
and became the aggressor. See Tex. Pen. Code Ann. § 9.31(b)(4) (Vernon 2003). 
          The jury’s verdict of guilty was an implicit finding rejecting the defendant’s
self-defense theory. See Saxton, 804 S.W.2d at 914. After viewing the evidence in
the light most favorable to the jury’s verdict, we conclude that the jury could have
reasonably found against appellant on the issue of self defense beyond a reasonable
doubt. Furthermore, after viewing the evidence in a neutral light, including all
evidence relevant to a finding of self defense, we conclude that the evidence is not
so weak that the verdict is clearly wrong or manifestly unjust or that the standard of
proof beyond a reasonable doubt could not have been met. Accordingly, we hold that
the evidence was legally and factually sufficient to support the jury’s implicit
rejection of appellant’s theory of self-defense.
          We overrule appellant’s first and second points of error.
 

Conclusion
We affirm the judgment of the trial court.
 
 
 
                                                             Terry Jennings
                                                             Justice
 
Panel consists of Justices Nuchia, Jennings, and Higley.
 
Do not publish. Tex. R. App. P. 47.2(b).