COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-006-CR

 

 

RUBEN GAMEZ                                                                   APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








A jury convicted Appellant Ruben Gamez of one
count of indecency with a child by exposure (count one) and one count of
indecency with a child by contact (count two). 
The trial court sentenced him to four years= confinement
in the Institutional Division of the Texas Department of Criminal Justice on
count one and six years' confinement on count two, the sentences to be served
concurrently.  In four points, Appellant
argues that (1) the evidence is legally and factually insufficient to prove
beyond a reasonable doubt that while acting with an intent to arouse or gratify
his sexual desire, he intentionally exposed any part of his genitals to the
female complainant, and (2) the evidence is legally and factually insufficient
to prove beyond a reasonable doubt that while acting with an intent to arouse
or gratify his sexual desire, he intentionally caused the female complainant to
touch any part of his genitals.  Because
we hold that the evidence is legally and factually sufficient to support
Appellant=s convictions, we affirm the
trial court=s judgment.

On May 15, 2004, the complainant, a
seven-year-old girl, went to Appellant=s
apartment at her mother=s request to give him some
photographs.  Appellant and the
complainant lived in the same apartment complex in Arlington, Texas.  The complainant knew Appellant because her
mother had previously been in an eight-year relationship with Appellant=s
cousin, Freddie, and Appellant had shared the complainant=s
household at one time.








At trial, the complainant testified that when she
went to Appellant=s apartment, he answered the
door wearing a robe.  She stated that
when she went into the apartment, he took the pictures and invited her in to
look around his new apartment.  She
testified that he then picked her up, carried her into the bedroom, set her on
the bed, and got on top of her and began moving up and down.  On cross-examination, in response to the
question, AIs it possible that he just fell
with you when he was holding you and fell on top of you?@ she
answered, AI guess.@  She  further
stated that his Amiddle part@ was
hard when he was on top of her and that she told him that he was hurting
her.  She testified that he then rolled
her over.  She testified that she could
feel his Amiddle part@ on her
when he rolled her over.  She stated that
she told him that she had to go, and that when she got off the bed and bent
down to pick up her shoes that had slipped off, Ahis
middle part was sticking out.@

The complainant=s mother
testified that the complainant was happy when she left on the errand, but when
she returned home, she was pale and ran to her room.  The complainant=s mother
further testified that the complainant told her that when she went to Appellant=s
apartment, he picked her up, carried her to the bedroom, and Alaid
himself on top of her@; that she told him that he was
too heavy, so he flipped onto his back and put her on top of him; that she then
told Appellant that she had to go, and when she got off the bed, Ashe saw
his privates.@ 
After the complainant made these statements, her mother called the
police and gave a written statement.








The same evening, the complainant=s mother
took her to Cook Children=s Medical Center after the
complainant reported to her aunt that while she was at Appellant=s
apartment, Ashe had something wet on her
leg, . . . [and] it touched her,@ Ait@ meaning
Appellant=s penis.

The doctor who examined her at the medical center
testified that the complainant 

[s]aid she went to
[Appellant=s] to drop off some
pictures, and he told her to come in and went to his bedroom.  He put her on the bed, and then he put her on
top of him.  She told him that she had to
go.  So she got up, and then she saw what
she called his middle part, which is his penis. 
And he had a robe on, and she said she thought it stuck out of it and it
was up.  And she said she also felt
something wet on her shorts and a drop on her leg.

 

The complainant told the doctor that she was not sure whether
Appellant=s penis touched her skin, but
she knew she got a wet spot on her leg. 
The doctor also testified that the complainant pointed to her left thigh
to indicate where the wetness had occurred and that some spots on the
complainant=s left thigh fluoresced under a
light, indicating a protein substance. 
The doctor swabbed those areas for evidence.  The swabs did not contain semen.  The forensic biologist for the Tarrant County
Medical Examiner=s Office Crime Laboratory who
tested the swab testified that it was her opinion that the sample was not an
ejaculate.  She did not test the sample
for DNA because her test did not reveal any sperm in the sample.  She also testified, however, that the sample
could be a different bodily fluid.








The complainant=s mother
testified that while she was involved with Appellant=s
cousin, Freddie, she and her daughters and Freddie had shared a house with
Appellant, and during that time she had never seen anything to indicate that
Appellant acted inappropriately with her daughters.  She stated that her daughters were friendly
with Appellant and would hug him, but they never jumped up into his arms.

Appellant testified that he has a ruptured disk
and two herniated disks.  He stated that
it was not uncommon for him to carry the complainant or hug her because every
time she saw him, she=d hug him or jump in his
arms.  On cross-examination, though, he
stated that he did not ever carry her around because of his back but that she
would frequently jump into his arms.  He
testified that on the day in question, after she gave him the photographs, she
stated that she wanted to see his apartment and headed into the bedroom, and as
soon as he followed her into the room, she jumped into his arms, causing them
both to fall onto the bed.  He stated
that he immediately moved off of her and asked if she had been hurt by the
fall, she said no, and she then left.  He
further stated that he was wearing boxer shorts at the time and was unsure if
his penis had been exposed, but any exposure, if it occurred, was
accidental.  He also stated that his robe
was tied shut the entire time that the complainant was in his apartment.








Although there is evidence that the exposure was
accidental or unintended, and the complainant=s
testimony did not specifically address intent, from the evidence presented a
rational jury could have concluded that the exposure was intentional.[2]  The jury is the sole judge of the credibility
of the witnesses and the weight to be given their testimony.[3]  Thus, a rational jury could have disbelieved
Appellant=s testimony and inferred his
intent to commit the offense from the testimony of the complainant and her
mother.[4]  Applying the appropriate standards of review,[5]
we therefore hold that the evidence is legally and factually sufficient to
support Appellant=s conviction for indecency with
a child by exposure.  We overrule
Appellant=s first two points.








As to count two of the indictment, the issue is
somewhat more problematic.  The
indictment alleged that Appellant, ADID . .
. , WITH THE INTENT TO AROUSE OR GRATIFY [HIS] SEXUAL DESIRE . . . , ENGAGE IN
SEXUAL CONTACT WITH [THE COMPLAINANT], A CHILD YOUNGER THAN 17 YEARS AND NOT
THE SPOUSE OF [APPELLANT] BY CAUSING [THE COMPLAINANT] TO TOUCH ANY PART OF
[HIS] GENITALS.@[6]








At trial, an extended bench conference took place
regarding the difference between Appellant touching the child with his genitals
as opposed to causing the child to touch his genitals.[7]  The trial court accurately noted the
awkwardness of this statute when applied to the circumstances now before this
court.  Yet there was evidence from which
a rational jury could conclude that the State proved the elements of the
offense as allegedCthere was evidence that
Appellant moved up and down on the complainant when he was on top of her, that
he rolled her over on top of him when she said that he hurt her, that when he rolled
her over, she could feel his hard penis, that his penis was still hard when she
saw it as she picked her shoes up from the floor, and that these events all
took place in the space of minutes.  Based on the applicable standards of review,[8]
we hold that the evidence is legally and factually sufficient to prove that
while acting with an intent to arouse or gratify his sexual desire, Appellant
intentionally caused the female complainant to touch any part of his
genitals.  We overrule Appellant=s third
and fourth points. Having overruled all of
Appellant=s points, we affirm the trial
court=s
judgment.  

 

LEE
ANN DAUPHINOT

JUSTICE

PANEL A:   CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED:  January 25, 2007











[1]See Tex. R. App. P. 47.4.





[2]See Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).





[3]See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State,
34 S.W.3d 912, 919 (Tex. Crim. App. 2000).





[4]See Tex. Code Crim. Proc. Ann. art. 38.04; Margraves, 34 S.W.3d at 919.





[5]See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Hampton, 165 S.W.3d at 693 (both
setting out the legal sufficiency standard of review); Watson v. State,
204 S.W.3d 404, 414B15, 417 (Tex. Crim. App. 2006); Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005) (both setting out the factual
sufficiency standard of review).





[6]See Tex. Penal Code Ann. '
21.11(a)(1) (Vernon 2003).





[7]See id.





[8]See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Hampton, 165 S.W.3d at 693 (both
setting out the legal sufficiency standard of review); Watson, 204
S.W.3d at 414B15, 417; Drichas, 175 S.W.3d at 799 (both
setting out the factual sufficiency standard of review).