Opinion issued November 15, 2007

















In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00674-CR




GEORGE LOTT, JR., Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 1037391






MEMORANDUM OPINION
          A jury convicted appellant, George Lott, Jr., of aggravated assault and assessed
punishment at seven years in prison. See Tex. Penal Code Ann. §§ 22.01(a)(2),
22.02(a)(2) (Vernon Supp. 2006). In two issues, appellant challenges the legal and
factual sufficiency of the evidence to support his conviction. We affirm. 
Background
          On the evening of August 13, 2005, appellant got into an argument with Ezar
Goffney, at a park near Ezar’s apartment. Both Ezar and his brother, Christopher,
testified that they were at the park when they saw appellant park his truck near an
apartment complex across the street. Ezar testified that he saw appellant take a small
handgun from the truck’s toolbox and hide it in his clothing. Appellant approached
the brothers and started an argument about a mutual female friend. In the heat of the
argument, appellant flashed his weapon at the Goffney brothers and threatened to kill
Ezar, Christopher, and Ezar’s wife and child, saying, “I will take your life. I will take
your baby. I’ll bleed your wife. I’m going to bleed you. Bleed everybody in your
family. And if I ever catch you walking out here, I’m going to kill you, too.” After
about ten minutes, they agreed to go their separate ways. 
          Both Ezar and Christopher testified that they felt threatened, but they,
nevertheless, turned their backs on appellant and began walking away, while
appellant continued threatening them verbally. Christopher turned back and saw
appellant pointing a small caliber handgun at them. Christopher immediately pushed
his brother aside, yelling, “Get down, watch out!” Christopher testified that he saw
appellant in “the shooter formation, feet spread apart, one hand balancing the weapon,
the other one clutching it.” Five or six shots were fired in rapid succession, but the
shots did not hit either brother. Ezar testified that he saw appellant fire the last three
shots at him and his brother. 
          Ezar and Christopher ran to their apartment, where Ezar called the police. 
They stayed inside the apartment until the police arrived. Later that night, both Ezar
and Christopher identified appellant from a photographic lineup, although Ezar
testified that he did not need a photographic lineup to identify appellant as the
shooter. At trial, Ezar said that appellant was the person who shot at him. Likewise,
Christopher testified at trial that he was “absolutely” positive that appellant was the
person who shot at him and his brother.
          Eric Warren, who lived nearby, testified that he heard loud yelling outside his
home between 8:00 and 8:45 that evening. From his balcony, Warren saw a heavy-set
black man standing in the parking lot across from Warren’s townhome and yelling at
someone. Warren testified that he saw the man reach into a duffel bag, and Warren
immediately heard three to six gunshots. Warren’s view was partially obstructed, and
he said that he could not identify the shooter. Warren said that he did not see anyone
in close proximity to the shooter. 
          Officer Aaron Day of the Houston Police Department responded to a call
regarding the shooting that night. He interviewed Ezar, Christopher, and Eric
Warren, investigated the scene of the shooting, and collected five spent shell casings
from the parking lot across from the apartment complex. Based on his interviews
with Ezar and Christopher, Officer Day created the photographic lineup, from which
Ezar and Christopher positively identified appellant as the shooter. 
          Appellant testified that he had known Ezar casually since 2001, and he said
they had a conflict over a mutual female friend. Appellant testified that he was
visiting friends who lived near Ezar, when he happened upon Ezar and Christopher
that night. He confronted Ezar about something he thought Ezar had said about him. 
He denied threatening Ezar and said he was unarmed at the time. He testified that
Ezar and Christopher walked away, but that Ezar returned, brandishing a handgun
wrapped in a red bandana. He testified that he ran away when Ezar fired more than
five or six shots in his direction. He said Ezar chased him on foot and later fired
additional gunshots at him. Appellant testified that he fled to a gas station and called
the police, but he hung up when he was put on hold. 
          Darryl Tucker, who lived nearby, also testified for the defense. He said that he
was in the parking lot with friends when he saw appellant there yelling at two men. 
Tucker recognized appellant, who was a casual acquaintance, but he did not know the
two other men by name. Tucker testified that he ran away as soon as he heard
gunshots. He said that he heard four or five gunshots in rapid succession, “pop-pop-pop-pop-pop.” He also testified that appellant could not have fired the shots, because
he was “right behind us,” and “running right along with us.” Tucker further testified
that he thought the shots sounded like they came from across the street, where Ezar
and Christopher were standing. 
Standard of Review
          In two issues, appellant challenges the legal and factual sufficiency of the
evidence to support his conviction for aggravated assault by threat. A person
commits aggravated assault by threat if the person intentionally or knowingly
threatens another with imminent bodily injury and uses or exhibits a deadly weapon
during the commission of the assault. Tex. Penal Code Ann. §§ 22.01(a)(2),
22.02(a)(2). 
          In evaluating the legal sufficiency of the evidence, we view the evidence in the
light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. 
Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We note that
the trier of fact is the sole judge of the weight and credibility of the evidence.
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when
performing a legal sufficiency review, we may not re-evaluate the weight and
credibility of the evidence and substitute our judgment for that of the factfinder.
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any
inconsistencies in the evidence in favor of the verdict. Curry v. State, 30 S.W.3d 394,
406 (Tex. Crim. App. 2000).
          When conducting a factual-sufficiency review, we view all of the evidence in
a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). We will
set the verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). Under the first prong of Johnson, we cannot conclude that a conviction is
“clearly wrong” or “manifestly unjust” simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury’s resolution of that conflict. Id. Before finding that
evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury’s verdict. Id. In
conducting a factual-sufficiency review, we must also discuss the evidence that,
according to the appellant, most undermines the jury’s verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).
          We may not re-weigh the evidence and substitute our judgment for that of the
factfinder. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The factfinder
alone determines what weight to place on contradictory testimonial evidence because
that determination depends on the factfinder’s evaluation of credibility and demeanor. 
Cain, 958 S.W.2d at 408–09. As the determiner of the credibility of the witnesses,
the factfinder may choose to believe all, some, or none of the testimony presented. 
Id. at 407 n.5. 
Legal Sufficiency
          In his first issue, appellant contends that the evidence is legally insufficient
because Ezar and Christopher were biased and, therefore, not credible witnesses. 
Both Ezar and Christopher testified that appellant threatened them and shot at them,
and they both positively identified appellant in open court. They both saw the
handgun. Both testified that they felt threatened or feared for their lives. Officer Day
collected five spent shell casings from the area where appellant had argued with Ezar
before Ezar and Christopher walked away. Viewing the evidence in the light most
favorable to the verdict, we conclude that a rational jury could have found beyond a
reasonable doubt that appellant intentionally or knowingly threatened Ezar with
imminent bodily injury while using and exhibiting a deadly weapon, namely, a
handgun. See Vodochodsky, 158 S.W.3d at 509.
          We overrule appellant’s first issue.
Factual Sufficiency
          In his second issue, appellant contends that the evidence is factually
insufficient. Appellant argues that under the second prong of Johnson, the verdict is
against the great weight and preponderance of the evidence because Tucker testified
that appellant could not have been the shooter. See Johnson v. State, 23 S.W.3d at
11. Appellant further asserts that no other physical evidence or testimony has
corroborated the Goffney brothers’ testimony. 
          Appellant testified that he was unarmed and that Ezar shot at him in two
separate bursts of gunfire. He directs us to Tucker’s testimony that Tucker ran away
as soon as he heard gunshots and that appellant could not have fired the shots,
because he was running with or behind Tucker. However, Tucker also testified to
hearing only one burst of gunfire: four or five shots in rapid succession. When
viewed in a neutral light, and in light of Ezar’s and Christopher’s clear and direct
testimony that they saw appellant shoot at them with a handgun after threatening Ezar
and his family, we cannot say that the great weight and preponderance of the evidence
contradicts the jury’s verdict. See Johnson, 23 S.W.3d at 11; see also Watson v.
State, 204 S.W.3d at 417. 
          We overrule appellant’s second issue.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                             Sam Nuchia
                                                             Justice

Panel consists of Justices Nuchia, Jennings, and Keyes.

Do not publish. Tex. R. App. P. 47.2(b).