COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-404-CR

 

 

SHEILA LANETTE CALHOUN                                                 APPELLANT

A/K/A
SHEILA L. CALHOUN

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








A jury convicted Appellant
Sheila Lanette Calhoun of arson, found that she had used or exhibited a deadly
weapon during the commission of the offense, and upon her plea of true to the
enhancement paragraph, assessed her punishment at twenty years= confinement in the Institutional Division of the Texas Department of
Criminal Justice.  The trial court
sentenced her accordingly.  In two
issues, Appellant contends that the evidence is legally and factually
insufficient to support her conviction. 
Because we hold that the evidence is legally and factually sufficient,
we affirm the trial court=s judgment.

While Appellant admits that
the State=s video expert
testified that the security tape Ashowed a person wearing a red ski cap by the clothes which were burned
shortly before the initial flash of the fire was observed on the wall@ and that Athis person
. . . is identified as Appellant,@ she contends that there is no testimony that anyone saw her start the
fire and no testimony that she was the person who started the fire, that no
evidence connects her with the commission of any part of setting the fire, and
that no direct evidence connects her with setting the fire.  Appellant challenges only the jury=s conclusion that it was she who started the fire; she does not
challenge the other elements of arson.

        In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.[2]

 








This standard gives full play
to the responsibility of the trier of fact to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.[3]  The trier of fact is the sole judge of the
weight and credibility of the evidence.[4]  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the fact-finder.[5]  Instead, we Adetermine whether the necessary inferences are reasonable based upon
the combined and cumulative force of all the evidence when viewed in the light
most favorable to the verdict.@[6]  We must presume that the
fact-finder resolved any conflicting inferences in favor of the prosecution and
defer to that resolution.[7]  The standard of review is the same for direct
and circumstantial evidence cases.[8]








When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party.[9]
We then ask whether the evidence supporting the conviction, although legally
sufficient, is nevertheless so weak that the fact-finder=s determination is clearly wrong and manifestly unjust or whether
conflicting evidence so greatly outweighs the evidence supporting the
conviction that the fact-finder=s determination is manifestly unjust.[10]  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.[11]








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@[12]  We cannot conclude that a
conviction is clearly wrong or manifestly unjust simply because we would have
decided differently than the jury or because we disagree with the jury=s resolution of a conflict in the evidence.[13]  We may not simply substitute our judgment for
the fact-finder=s.[14]  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@[15]  Thus, we must give due
deference to the fact-finder=s determinations, Aparticularly those determinations concerning the weight and
credibility of the evidence.@[16]

An opinion addressing factual
sufficiency must include a discussion of the most important and relevant
evidence that supports the appellant=s complaint on appeal.[17]








Adrian Watterson testified
that on February 20, 2006 at around suppertime, he was working as an assistant
manager at Dollar General in Fort Worth, Tarrant County, Texas.  Only one other employee was working, and
about ten people were shopping. 
Watterson noticed that an AfricanBAmerican woman, identified later in his testimony as Appellant,
purchased a few items, left the store, and came back between fifteen and thirty
minutes later.  She then began filling
her basket and kept watching him and his staff. 
Watterson alerted his coworker to watch the floor, keep his eyes open,
and report if he actually saw something happen. 
Watterson was not able to watch the woman constantly; she stayed in the
store a long time, more than thirty minutes. 
When he noticed her again, she was walking around the cash register
area, which is by the front entrance, her basket was pretty full, and she was
constantly looking around.  After that,
she was ready to check out.  Then
Watterson heard somebody yell, AFire!@  Watterson saw the top of a flame and a lot of
smoke about 100 feet away toward the back of the store but did not see anyone
back there.  Appellant was in the
register line near him at this point. Appellant tried to leave without paying
for her basket of items but was later apprehended.[18]








When the police searched
Appellant after her arrest but before placing her in a squad car, they found a
nail.  When the investigator for the
State retrieved Appellant=s clothing
from the sheriff=s office
pursuant to a warrant, he noticed a yellow, flick-type lighter and a single
dollar bill.  After obtaining a second
warrant, he also retrieved that property. 
The lighter still worked.  The
clothing included a red or maroon watch or beenie cap, a white Echo Unlimited
jersey pullover with short sleeves, a black leather jacket, black wind pants,
a  pullover sweatshirt, and a pair of
pajama bottoms.  

After the fire had been
extinguished, Nancy Maturino, who worked for Blackmon Mooring Steamatic, went
to the store to clean up.  Between items
of bulk dog food, she found a bottle of charcoal lighter fluid that had been
opened. The Tarrant County Medical Examiner=s office was unable to develop prints from the bottle=s surface. 








E.C. Rodriguez, a member of
the arson and bomb unit of the Fort Worth Fire Department, testified that he
was part of the follow-up investigation team for the fire department.  He went to the store to retrieve the bottle
of lighter fluid.  He estimated that
about 1/3 of the liquid had been removed from the 32-ounce bottle before he got
it.  He also testified that a cigarette
lighter can be considered an open flame and that combustible material can be a
deadly weapon.  He testified that it would
take A[p]robably a matter of seconds@ for ten ounces of lighter fluid on clothing and lit with an open
flame to ignite and that it would result in Anot exactly an open explosion like gasoline.  It would start in a very slow process,
building up, once again, the fumes and growing.@  It would probably take Aa very short period of time@ to get to 175 or 180 degrees. 
He opined that if lighter fluid were squirted over a rack of clothing
that was then lit at the bottom, the whole rack would be on fire in a matter of
seconds. 

Lieutenant Edsil Young of the
fire department testified that he observed on the night of the fire that two
separate racks of clothing had been burned at the area of origin and that he
believed that they were ignited with an open flame.  He also testified that there were no nearby
electrical connections that could have caused the fire and no lighting strikes,
to his knowledge.  Finally, he testified
that on the security videotape, he saw an individual wearing a red cap leaving
the area of origin, and it appeared that she had a white object in one of her
hands. 








Grant Fredericks, a forensic
video analyst testifying for the State, explained that reflection off of
objects can pinpoint when a fire starts. 
He testified that when he analyzed the store=s security tape, he observed a dark-skinned, shorterBthanBaverage
person walk through the door wearing a red cap, a dark coat with white clothing
underneath it, dark pants, lightBcolored socks, and sandals of some kind.  He was able to identify every time that
person appeared on any of the camera views; nobody else in the store was
dressed that way.  He testified that the
person was in close proximity to the area of the fire=s origin when the reflection started. 
He testified that there was absolutely no fluctuation or change in the
area of the fire=s origin
before the person was seen back there. 
He opined that the reflection was caused by the fire and by nothing
else.  He said that the person was the
only one in the area and that the person was holding an object in the person=s hand.  AThe object is primarily light in color[,] [p]robably white.  It has a dark top to it.@  He testified that 

[t]he
images of the charcoal lighter fluid bottle [are] completely consistent with
that object that=s
being held. . . . The object shares the same class characteristics, but we can=t  even say really it=s of
the same class because there=s just not enough
information.  What I can say is that if
we went down to that scene, stood exactly in the same position, under the same
lights and held that bottle up, I would expect that it would have the same
values and would look the same. 
Therefore, I can=t say
it=s not
that bottle.  But I can=t go
any further than that. 

 

He also testified that the
person who entered the store wearing the red ski cap is the same person seen
back by the clothes shortly before the flash was observed on the wall.  The person=s red hat was consistent with Appellant=s red hat that had already been admitted into evidence. 








Sabino Vasquez, a fire
investigator for the Fort Worth Fire Department, testified that he spoke with
Appellant the night of the fire and that she was wearing a maroon or reddish
hat and long T-shirt and that the hat was consistent with the color of the hat
in evidence.  He testified that Appellant
told him that she did not set the fire. 
He believed that she had set the fire and had also been involved in
setting a fire at a different Dollar General a few months earlier.  He was unaware that Appellant was in jail at
the time of the earlier fire. 

The security video, admitted
into evidence as State=s Exhibit
No. 1, shows the woman in the red cap, baggy pants, short dark jacket, and long
white shirt, identified in testimony as Appellant, entering the store and then
browsing in the shopping area near the cash register.  She later appears in the clothing area; no
one else appears in view in that area. 
She knocks an item of clothing so that it moves slightly.  She then moves around the racks in a crouched
position, goes out of view, and appears in view again with a white object in
her hand as the back wall starts glowing. 
When flames appear, neither Appellant nor anyone else is in the clothing
area as depicted on the video. 








The presence of Appellant and
no one else in close proximity to the scene of the fire=s origin at the time of the reflection or flash, the presence of a
white object in her hand that is consistent with a charcoal lighter fluid
bottle, the presence of a lighter in her possessions at jail, and the discovery
after the fire of the opened charcoal lighter fluid bottle at the store could
all lead the jury to conclude beyond a reasonable doubt that it was Appellant
who started the fire.          Consequently, based on the standards of
review given above, we hold that the evidence is legally and factually
sufficient to support Appellant=s conviction, overrule her two points, and affirm the trial court=s judgment.

 

PER CURIAM

PANEL F:  
DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH        

Tex. R. App. P. 47.2(b)

 

DELIVERED: March 27, 2008                 











[1]See Tex. R. App. P. 47.4.





[2]Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979);
Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). 





[3]Jackson, 443
U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778. 





[4]See Tex. Code Crim. Proc. Ann. art.
38.04 (Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim.
App. 2000). 





[5]Dewberry
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert.
denied, 529 U.S. 1131 (2000). 





[6]Hooper
v. State, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). 





[7]Jackson, 443
U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778. 





[8]Clayton, 235
S.W.3d at 778; Hooper, 214 S.W.3d at 13.





[9]Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). 





[10]Watson, 204
S.W.3d at 414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000). 





[11]Watson, 204
S.W.3d at 417. 





[12]Id. 





[13]Id.





[14]Johnson, 23
S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).





[15]Johnson, 23
S.W.3d at 8.





[16]Id. at
9.





[17]Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 





[18]See
Calhoun v. State, No. 02-06-00405-CR, 2008 WL 623664 (Tex. App.CFort
Worth Mar. 6, 2008, no pet. h.) (affirming trial court=s
judgment in theft case).