ACCEPTED
03-15-00116-CR
6932118
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/15/2015 1:44:11 PM
JEFFREY D. KYLE
CLERK

NO. 03-15-00116CR

IN THE

THIRD COURT OF APPEALS

AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/16/2015 11:01:11 AM
JEFFREY D. KYLE
Clerk

---

CHRISTOPHER QUINN RIVERA,
Appellant

VS.

THE STATE OF TEXAS,
Appellee

---

APPEAL FROM

THE 428TH JUDICIAL DISTRICT COURT

HAYS COUNTY, TEXAS

TRIAL COURT CAUSE NO. CR14-0448

---

**STATE'S BRIEF**

---

John David Couch
Asst. Criminal District Attorney
712 S. Stagecoach Trail, Suite 2057
San Marcos, TX 78666
Ph: (512) 393-7600 / Fax: (512) 393-7619
State Bar No.24048407
john.couch@co.hays.tx.us
Attorney for the State of Texas

## NAMES OF PARTIES

Appellee:                  State of Texas

Attorneys for the State:    Wes Mau, Hays County District Attorney
     At trial:           John Couch, Assistant District Attorney
     On appeal:       John Couch
                       Asst. Criminal District Attorney
                       712 S. Stagecoach Trail, Suite 2057
                       San Marcos, TX 78666
                       State Bar No. 24048407
                       Attorney for the State of Texas

Appellant:               Christopher Quinn Rivera

Attorney for Appellant:
     At trial:           Erick Bovik
                       Bovik & Meredith, P.C.
                       PO Box 150129
                       Austin, TX 78715
                       State Bar No. 00792366
                       Atttorney for Defense

     On appeal:       Rickey D. Jones
                       PO Box 142416
                       Austin, TX 78714
                       Ph. (210) 710-7062/Fax (866) 589-0541
                       State Bar No. 00787791
                       Attorney for Appellant

# TABLE OF CONTENTS

NAMES OF PARTIES .................................................................................ii

TABLE OF CONTENTS ............................................................................. iii

INDEX OF AUTHORITIES..........................................................................iv

STATEMENT OF THE CASE ........................................................................2

STATEMENT REGARDING ORAL ARGUMENT.............................................2

ISSUES PRESENTED..................................................................................2

STATEMENT OF FACTS.............................................................................3

SUMMARY OF THE ARGUMENT..................................................................3

ARGUMENT ...............................................................................................3

    STATE'S RESPONSE TO RIVERA'S SOLE POINT OF ERROR
    CONTRARY TO RIVERA'S ARGUMENT, THE EVIDENCE IS
    SUFFICIENT FOR A RATIONAL TRIER OF FACT TO HAVE
    FOUND THE ESSENTIAL ELEMENTS BEYOND A
    REASONABLE DOUBT.

CONCLUSION AND PRAYER.......................................................................14

CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P.,
RULE 9.4 ...................................................................................................15

CERTIFICATE OF SERVICE .......................................................................16

# INDEX OF AUTHORITIES

## FEDERAL CASES

*Jackson v. Virginia*, 443 U.S. 307 (1979)........................................................................3

## STATE CASES

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)...............................................3

*Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009)...............................................4

*Lopez v. State*, 03-11-00086-CR, 2013 WL 4487555 (Tex. App.—Austin Aug. 15, 2013, no. pet. h.)...............................................................4

*Margraves v. State*, 34 S.W.3d 912 (Tex. Crim. App. 2000).........................................4

*Watson v. State*, 204 S.W.3d 404 (Tex. Crim. App. 2006)............................................4

## STATUTES

Tex. Penal Code § 36.06 ..................................................................................................5

Tex. R. App. P. Rule 38.2 ................................................................................................2

Tex. R. App. P. Rule 9.4 ................................................................................................15

NO. 03-15-00116CR

IN THE

THIRD COURT OF APPEALS

AUSTIN, TEXAS

---

CHRISTOPHER QUINN RIVERA,
Appellant

VS.

THE STATE OF TEXAS,
Appellee

---

APPEAL FROM

THE 428TH JUDICIAL DISTRICT COURT

HAYS COUNTY, TEXAS

TRIAL COURT CAUSE NO. CR14-0448

---

**STATE'S BRIEF**

---

TO THE HONORABLE JUSTICE OF THE COURT OF APPEALS:

COMES NOW the State of Texas, by and through her Assistant District

Attorney, John Couch, and files this Brief in Opposition to Appellant's Brief

pursuant to Texas Rules of Appellate Procedure. Rule 38.2 and would show the Court the following:

## STATEMENT OF THE CASE

The State tried Christopher Quinn Rivera ("Rivera") for the indicted charge of Retaliation in Cause No. CR14-0448 in the 428th Judicial District of Hays County, Texas on February 2, 2015.[1] A jury found Rivera guilty of the charged offense and the punishment was before the Honorable Judge Bill Henry.[2] Judge Henry sentenced Rivera to six years in the Texas Department of Corrections Institutional Division and imposed a $500 fine on February 4, 2015.[3]

Rivera filed his appellate brief July 8, 2015.[4]

## STATEMENT REGARDING ORAL ARGUMENT

The State does not request oral argument.

## ISSUES PRESENTED

Rivera's issue is whether the evidence presented at trial is sufficient to support the conviction.

---

[1] CR 004
[2] CR 054
[3] CR 055
[4] Third Court of Appeals website, accessed August 21, 2015
http://www.search.txcourts.gov/Case.aspx?cn=03-15-00116-CR&coa=coa03

## STATEMENT OF FACTS

The State does not object to Rivera's statement of facts; however, pertinent facts have been supplemented in the analysis section of the State's brief.

## SUMMARY OF THE ARGUMENT

Sufficient evidence was presented such that a rational trier of fact could have found that Rivera sent text messages threatening to hurt Shannon Pitcher after she had called police to report his criminal mischief.

## ARGUMENT

**STATE'S RESPONSE TO RIVERA'S SOLE POINT OF ERROR**
CONTRARY TO RIVERA'S ARGUMENT, THE EVIDENCE IS SUFFICIENT FOR A RATIONAL TRIER OF FACT TO HAVE FOUND THE ESSENTIAL ELEMENTS BEYOND A REASONABLE DOUBT.

**Sufficiency of Evidence Standard of Review**

Due process requires the State to prove beyond a reasonable doubt every element of the crime charged.[5] In Texas, the *Jackson* standard is the only standard applied when courts are reviewing sufficiency of evidence claims.[6] Under the Jackson standard appellate courts:

> (1) view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, and

---

[5] *Jackson v. Virginia*, 443 U.S. 307, 316 (1979).
[6] *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

(2) assume that the jury resolved conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[7]

The appellate court's "role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally[;] . . . [it] will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element."[8] There must be an objective basis in the record in order to say that the great weight and preponderance of the evidence contradicts the jury's verdict.[9] Because the jury is the sole judge of a witness's credibility and the weight to be given the testimony, it may choose to believe some testimony and disbelieve other testimony.[10] Where testimony at trial definitively favors or contradicts the jury's verdict, the jury's credibility determination is paramount.[11] Therefore, a decision is not manifestly unjust solely because the court of appeals would have resolved the conflicting evidence in a different way.[12]

Retaliation is defined, in relevant part, by Texas Penal Code Section 36.06 as follows:

---

[7] *Lopez v. State*, 03-11-00086-CR, 2013 WL 4487555 (Tex. App.—Austin Aug. 15, 2013, no. pet. h.)(citing *Laster v. State*, 275 S.W.3d 512, 522 (Tex. Crim. App. 2009) (stating that under the Jackson standard, "it is the jury's duty 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts")).
[8] *Laster*, 275 S.W.3d at 522.
[9] *Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).
[10] *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).
[11] *Watson*, 204 S.W.3d at 417.
[12] *Id.*

(a) A person commits an offense if he intentionally or knowingly harms or threatens to harm another by an unlawful act:

(1) In retaliation for or on account of the service or status of another as a:

(B) person who has reported or who the actor knows intends to report the occurrence of a crime...

Retaliation is a felony of the third degree.[13]

## ANALYSIS OF RIVERA'S POINT OF ERROR

In his only raised issue, Appellant claims the evidence is legally insufficient to support his conviction. Appellant's claim fails because the Appellant's text messages and his own admissions make clear that he threatened Ms. Pitcher for reporting his criminal mischief to the police. The following Reporter's Record excerpts highlight the evidence the jury used to find Appellant guilty of Retaliation as alleged in the indictment.

**Rivera stipulated to the underlying offense of Criminal Mischief.[14] Rivera retaliated against Ms. Pitcher for calling police about the Criminal Mischief:**

Q:     (MR. COUCH) Okay. So on or about – well, let's say February 26th (2014), did you ever call the police for any reason?

A:     (MS. PITCHER) Yes.

Q:     Okay. And what was that for?

---

[13] Tex. Penal Code § 36.06.
[14] State's Exhibit No. 2.

A:  For – basically, Chris came over to my house and damaged my friend's vehicle and my own vehicle and was trying to get in my house.

Q:  Okay. Did you see him there that night?

A:  Yes.

Q:  Okay. What was he doing when you saw him?

A:  Banging on the windows, yelling, cussing.

Q:  Is that when you called the police?

A:  Yes.[15]

**Later, Detective Wray was assigned the case and contacted the Defendant on March 3, 2014:**

Q:  (MS. STALBAUM) Okay. Did you try to contact Christopher Rivera?

A:  (DETECTIVE WRAY) I did.

Q:  What date and time?

A:  Let me see. It looks like on the same date within 45 minutes. It says on the 3rd at 1048 hours I called and started trying to leave messages on Chris Rivera's phone.

Q:  Did you leave a message for him?

A:  It says I left a message, which – it all depends on the phone. Like with any case, I'd call and leave messages. If I can't get a – if they don't return my call

---

[15] RR Vol 3: 59: 8-20.

or – it depends on the phone. Sometimes I call your phone and it says "(830) 210-9451 is not available." And so all I know is it's a number and it's kind of hard to make sure that that's attached to somebody, so I'll then try to e-mail them. Depending on the case, I may even try to go to their house and identify them.

Q: What number did you call when you tried to contact him?

A: The number that I had, which was given to the victim is (801) 903-2169.[16]

A: ...I sent some e-mails to him, also.

...

Q: Okay. What date and time did you send an email?

A: It looks like on the same day (March 3rd) at 1139 hours I sent an e-mail asking him to call in or can we meet because I wanted to talk with him about the case.

Q: And what e-mail address was that?

A: I don't have those e-mails in front of me, they would have been in the case file, but it's something streamliner. I deal with so many of those. But I don't have that part of the – the sheet doesn't print out on this thing I have, (indicating).

Q: Does streamliner210@gmail.com sound correct to you?

A: That sounds like an e-mail I used.

Q: Did you get a response?

---

[16] RR Vol 3 49:21 - 50:12.

A:   I did not get a response from that either.[17]

**Defendant admitted sending text messages to Shannon Pitcher:**

Q:   (MR. COUCH) I mean, when you called her – basically, you called her a

whore –

A:   (DEFENDANT) Yes.

Q:   -- in one of these, correct?

A:   Uh – huh.  On numerous times.

Q:   Okay.  You're trying to get a reaction, right?

A:   I was just – you know, I was upset.  And, yes, basically, I was just trying to get

a reaction out of her.  I was just saying things, you know, just trying to get

some kind of reaction, which I never got, so I just basically just cut it out and

went on about my business and just never contacted her anymore after that.

Q:   All right.  When you said – you referred to her as just another Sorry, lying-ass

bitch –

A:   Uh-huh.

Q:   -- that was at 4:09 in the morning.  What was that one about?

A:   Because that's – I was just merely stating my opinion about her at that time.

Q:   Okay.  But that wasn't the last one you –

A:   After what I found out –

---

[17] RR Vol 3 50:21 – 51:11.

Q:     -- had sent.

Court Reporter: Hold on.  Hold on.

Q:     That was not the last text message you sent, right?

A:     May not have been.  If there's more, there's more from that day.  I know I sent a lot of them.  I know I sent a lot of them because I was just going off and just going off and I got it all out.  Once it was all out, I felt better –

Q:     Okay.

A:     -- and I left it alone.

Q:     Well, did it-- so did it take you six days and I don't know how many pages – several pages of text messages to get it all out?

A:     Well, like I said on the 1st, the phone I was sending those text messages from, I couldn't find it anymore, so I'm assuming it was stolen.  And so that's – you know, whoever else got my phone probably read everything I sent and just went ahead and had a field day with it, obviously.[18]

**After Detective Wray sent his email at 1139 hours of March 3, 2014, Defendant referenced the Detective's e-mail and threatened Shannon Pitcher in text messages sent only a few minutes after the Detective's e-mail:**

---

[18] RR Vol 3 159:1 – 160:14.

Q:  (MR. COUCH) All right.  So it goes here, (indicating): "Since you chose not to answer or comment.  And you involved the cops and I got some bitch-ass detective calling me."  What does "LMFAO" stand for?

A:  (MS. PITCHER) "Laughing my fucking ass off."

Q:  Okay.  All right.  So if we go up, that was on March 3rd, right?

A:  Yes.

Q:  Okay.  So on March 3rd 11:41 a.m. there's another one that says: "Yo, Bitch, so let me get this straight.  Your ex can fucking break all your shit and steal from you, no cops.  Your friend's dude can break into your vehicle, no cops.  Punch bitch you had there are both not safe.  Expect more visits from me.  You will hurt."  Did you take that as a threat?

A:  Yes.

Q:  And then 11:45 it talks about being contacted by the detective.

A:  Yes.

Q:  So at that point you had already reported this, correct?

A:  Yes.

Q:  Okay.  So that message from Exhibit 1-O carries over onto the top of State's Exhibit 1-P.  We still have a couple left, but this is the one that we saw – this is the message that we referenced to in 1-0 about the detective contacting the defendant, right, (indicating)?

A: Yes.

Q: Okay. So that says: "I'm not a bitch like your ex. I can get the job done and now you're gonna find out the kind of pain that I bring. And you will not be ready, will be caught off guard."

All right. And then that at 11:50: "Most important, you will lose. IDGAF." What is that?

A: I think that's, "I don't give a fuck."

**Defendant admits to using his Sister's phone and other phones during the time the retaliatory text messages were sent. These devices gave him access to his email address and password so he could have sent the retaliatory text messages.**

Q: (MR. COUCH) Okay. So were you saying that the phone was stolen March 1st, right?

A: (DEFENDANT) Yes.

Q: Okay. So March 2nd, March 3rd, when did you start using her (Sister's) phone?

A: Yeah. It was probably that same day or the next day. Because I would log her out and I'd log me in and upload stuff and then log back out, because it was her phone, it wasn't mine, I couldn't carry it around with me.[19]

---

[19] RR Vol 3 173: 23 – 174:6.

Q: Well, so, when did you log in? I mean, what were you logging in? I mean, I don't understand what you mean. You said you were logging her out. Logging her out of what?

A: Facebook.

Q: Okay.

A: Facebook. It's standard on every Android phone that you get. You don't have to download the app, it's already preloaded on there for you.

Q: So you were using the Internet after you lost the phone, correct?

A: Yeah, Facebook, I was. Yeah, because I made - -

Q: So what you - -

THE COURT: Please do not speak over one another.

Question, Counsel.

Q: (Mr. Couch) Don't you need Internet for Facebook?

A: Yes.

Q: Okay, so you would have had Internet during this period, correct?

A: Yes.[20]

**Rivera contradicts himself and admits he had access to several phones and internet access so he could have sent the threatening text messages. Rivera's testimony is not credible.**

---

[20] RR Vol 3 174:14 - 175:8.

Page 12

Q: (MR. COUCH) Okay. So the only time you had Internet access was with your sister's phone?

A: (DEFENDANT) Yes.[21]

Q: Okay. So you had access to several phones and you sent texts from several different phones, as well, correct?

A: Yes. Ms. Pitcher could also tell you that I had two phones every time I went to her house: one of them was activated, the other one wasn't. The other one was the one that was the 801 number that would use the Wi-Fi.[22]

...

A: Yes. It's not really a big hassle for me to borrow one of my friend's phones that I happen to be hanging around with and just say, like, "Hey, can I use your phone real quick, so I can check my Facebook?"[23]

As the highlighted record makes clear, the State proved all of the elements of Retaliation to support Appellant's conviction. The Defendant stipulated to the underlying offense of criminal mischief that caused Ms. Pitcher to call police in the first place. The Defendant knew Ms. Pitcher had contacted the police because he sent her text messages referencing the email sent by Detective Wray. Defendant then threatened Ms. Pitcher by stating, "You will hurt" in another text message.

---

[21] RR Vol 3 176: 16-18.
[22] RR Vol 3 191:22 – 191:2.
[23] RR Vol 3 190:2-5.

## CONCLUSION AND PRAYER

Ms. Pitcher's testimony, as well as the Appellant's own admissions and his text messages, make clear that Appellant retaliated against Ms. Pitcher for calling the police to report his criminal mischief. Appellant's threatening text messages were sent to Ms. Pitcher within hours of her calling police. The text messages' plain language references the pending investigation giving the Appellant knowledge that Ms. Pitcher reported the criminal mischief to police. Because Ms. Pitcher reported the criminal mischief to police, the Appellant threatened that she would hurt satisfying all elements of the offense.

Wherefore, premises considered, the State respectfully requests the Court overrule Rivera's appeal and affirm the trial court's judgment of Guilty in Cause No. CR14-0448, including affirmation of the punishment, and grant the State all relief to which it is justly entitled.

Respectfully submitted,

By:

_____
John Couch
Asst. Criminal District Attorney
712 S. Stagecoach Trail, Suite 2057
San Marcos, TX 78666
Ph. (512) 393-7600 Fax (512)393-7619
State Bar No.24048407
john.couch@co.hays.tx.us
Attorney for the State of Texas

## CERTIFICATE OF COMPLIANCE WITH
## TEX. R. APP. P., RULE 9.4

I certify that this brief contains 2,326 words, exclusive of the caption, names of parties and counsel, table of contents, index of authorities, statement of the case, statement regarding oral argument, issues presented, statement of facts, summary of the argument, signature, certificate of compliance, and certificate of service.

_____
John Couch
Asst. Criminal District Attorney

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing brief has been e-delivered to:

Rickey D. Jones
PO Box 142416
Austin, TX 78714
Ph. (210) 710-7062/Fax (866) 589-0541
State Bar No. 00787791
Attorney for Appellant

on this the 15 day of September, 2015.

John Couch
Asst. Criminal District Attorney